UNITED STATES of America,
Plaintiff–Appellee,

v.

Clarence A. LAIR, and Nellie M. Lair,
Defendants–Appellants.

No. 87–2152.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 5, 1988.

Decided Aug. 9, 1988.

234

Patricia L. Marshall, Hostetler & Kowalik, Indianapolis, Ind., for defendants-appellants.

Robert C. Perry and Gerald A. Coraz, Asst. U.S. Attys., John D. Tinder, U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before CUMMINGS, FLAUM, and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

The defendants-appellants, Clarence Lair and Nellie Lair, appeal from the district court's grant of summary judgment in favor of the United States for the unpaid principal and interest due and payable on a Small Business Administration ("SBA") loan that the Lairs personally guaranteed. The Lairs contest the grant of summary judgment, claiming that genuine issues of material fact exist regarding whether the SBA willfully caused deterioration, waste, or loss of the collateral for the loan, disposed of the collateral in a commercially reasonable manner, or should be estopped from pursuing them on the guaranty. Because we conclude that there are no genuine issues of material fact and the United States is entitled to judgment as a matter of law, we affirm.

## I.

On May 25, 1979, the Richmond Block Company borrowed $750,000 from the Second National Bank of Richmond, Indiana. Clarence Lair, President of Richmond Block, and Kenneth Lair, its Secretary, executed a promissory note in the amount of the loan. To secure the loan, the bank took the assets of Richmond Block as collateral. In addition, Clarence Lair and Nellie Lair each executed a personal guaranty in favor of the bank. To further secure the note, the appellants executed a mortgage on real estate located in Richmond, Indiana. The mortgage was properly recorded in the Office of the Recorder of Wayne County on June 1, 1979.

Eventually, Richmond Block defaulted on the loan. Pursuant to a participation agreement between the bank and the SBA, the bank assigned all of its rights, title, and interest in the note, guaranty, and mortgage to the SBA on August 19, 1983. Because the SBA guaranteed the Second National Bank's loan, it paid the bank the outstanding balance on Richmond Block's promissory note. The SBA then accelerated the maturity of the note, and declared the principal and interest immediately due and payable.

On December 22, 1983 the SBA entered into a Caretaker's Agreement with Jay C. Edwards. Edwards was responsible for liquidating the assets of Richmond Block. Clarence Lair strongly objected to Edwards' appointment as Caretaker of Richmond Block. He informed the SBA that in his opinion Edwards was likely to mismanage Richmond Block and allow its assets to be sold for less than their fair market value. The Lairs allege that in fact some of the collateral was stolen, and that Richmond Block's recycling process was sold for less than its fair market value to a company in which Edwards held an interest.

The assets of Richmond Block were auctioned on May 9, 1984, but the proceeds of

the auction were insufficient to cover the company's outstanding debt on the promissory note. The SBA therefore sued the Lairs on their personal guaranty and sought to foreclose the Lairs' real estate mortgage. On May 20, 1987 the district court granted the United States' motion for summary judgment. The court concluded that the Lairs owed the SBA $326,174.56; the judge also entered a decree of foreclosure.

On appeal, the Lairs raise three issues. First, they argue that summary judgment was inappropriate because there is a genuine issue of material fact regarding whether the SBA willfully caused deterioration, waste, or loss of the collateral, thereby absolving the Lairs of all liability on their personal guaranty. Second, they insist that a genuine issue of material fact exists in view of their contention that the SBA failed to dispose of the collateral in a commercially reasonable manner. Finally, the Lairs assert that there is a genuine issue of material fact on their claim that the United States should be estopped from pursuing them on their personal guaranty.

## II.

A motion for summary judgment is properly granted only when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing the district court's grant of summary judgment, we must view the record and all reasonable inferences therefrom in the light most favorable to the Lairs, the non-moving party. *Beard v. Whitley County*, 840 F.2d 405, 410 (7th Cir.1988) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). The party that bears the burden of proof on a particular issue at trial, however, cannot resist a motion for summary judgment by resting on its pleadings. Rather, the party must "affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material

fact which requires trial." *Beard*, 840 F.2d at 410 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) (emphasis in original). Whether a fact is considered material depends on the underlying law. *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir.1988). " '[O]nly disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.' " *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)) (emphasis in original).

### A.

The Lairs' first argument on appeal is that summary judgment was improperly granted because there is a genuine issue of material fact regarding their claim that the SBA willfully caused deterioration, waste, or loss of the collateral.[1] To secure the Richmond Block loan, the Lairs signed a personal guaranty. Courts which have reviewed the language of the personal guaranty form that the Lairs signed (SBA Form 148) have concluded that it is an absolute and unconditional guaranty—a guarantor will be released from liability under this guaranty only if he or she can demonstrate that the SBA willfully caused deterioration, waste, or loss of the collateral. *See, e.g., United States v. New Mexico Landscaping, Inc.*, 785 F.2d 843 (10th Cir.1986); *United States v. Mallett*, 782 F.2d 302 (1st Cir.1986); *United States v. Meadors*, 753 F.2d 590 (7th Cir.1985); *United States v. Kukowski*, 735 F.2d 1057 (8th Cir.1984); *First Nat'l Park Bank v. Johnson*, 553 F.2d 599 (9th Cir.1977); *United States v. Proctor*, 504 F.2d 954 (5th Cir.1974).

The guaranty itself provides in part that:

The obligation of the Undersigned hereunder [the Lairs], and the rights of Lender [SBA] in the collateral, shall not be released, discharged or in any way affected, nor shall the Undersigned have any rights against Lender: by reason of the fact that any of the collateral may be

---

1. The Lairs do not claim that the Richmond Block loan was not in default, nor do they assert that the mortgage and guaranty agreements were invalid, unauthentic, or improper in any respect.

in default at the time of acceptance thereof by Lender or later; ... nor by reason of any deterioration, waste, or loss by fire, theft, or otherwise of any of the collateral, *unless such deterioration, waste, or loss be caused by the willful act or willful failure to act of Lender.* (Emphasis added). Thus, the Lairs will be released from their otherwise unconditional obligations under their personal guaranty only if they can establish that the SBA willfully acted or failed to act in such a manner as to cause deterioration, waste, or loss of the collateral.

Reviewing the same SBA Form 148, the Tenth Circuit concluded that a "guarantor seeking to establish 'willfulness' under this guaranty agreement must allege 'a purpose by the SBA to diminish the value of the security in order to intentionally injure the defendants.'" *New Mexico Landscaping*, 785 F.2d at 848 (quoting *Austad v. United States*, 386 F.2d 147, 151 (9th Cir. 1967)). By signing this unconditional guaranty, the Lairs clearly waived any legal duty the SBA may have had to protect the collateral.[2] *See Meadors*, 753 F.2d at 595 (protection against SBA's negligent impairment of collateral waived under SBA guaranty agreement).[3] We therefore agree that intentional injury is the appropriate definition of "willfulness" under the SBA's personal guaranty agreement. At trial, the Lairs would bear the burden of proof on this issue. Thus, to avoid summary judgment they must affirmatively demonstrate by specific factual allegations that the SBA acted, or failed to act, with a purpose to intentionally injure the Lairs. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

■ Viewing all of the pleadings and the inferences therefrom in the light most favorable to the Lairs, we do not believe that they established that a genuine issue of material fact exists with regards to the "willful" actions of the SBA. In his affidavit, Clarence Lair stated only that he objected when the SBA appointed Edwards as Caretaker of Richmond Block, and that as a result of Edwards' actions certain unidentified parts of the collateral were "stolen." The Lairs did not assert that by appointing Edwards, the SBA acted for the purpose of causing them intentional injury.

On appeal the Lairs contend that by alleging that the SBA knew or should have known that Edwards' appointment would lead to the deterioration of the collateral, they sufficiently alleged a purpose by the SBA to diminish the value of the collateral. In resisting a motion for summary judgement, however, a party may not rely upon mere conclusory allegations unsupported by other evidence. *Beard*, 840 F.2d at 410. The appellants failed to specify what deterioration of the collateral occurred, how it occurred, what collateral was "stolen," or

2. In pertinent part, the guaranty form that the Lairs signed provides that:

The Undersigned hereby grants to Lender full power, in its uncontrolled discretion and without notice to the undersigned, but subject to the provisions of any agreement between the Debtor or any other party and Lender at the time in force, to deal in any manner with the Liabilities and the collateral, including but without limiting the generality of the foregoing, the following powers:

. . . . .

(e) In the event of the nonpayment when due, whether by acceleration or otherwise, of any of the Liabilities, or in the event of default in the performance of any obligation comprised in the collateral, to realize on the collateral or any part thereof, as a whole or in such parcels or subdivided interests as Lender may elect, at any public or private sale or sales, for cash or on credit or for future delivery, without demand, advertisement or notice of the time or place of sale or any adjournment thereof (the Undersigned hereby waiving any such demand, advertisement and notice to the extent permitted by law), or by foreclosure or otherwise, or to forbear from realizing thereon, all as Lender in its uncontrolled discretion may deem proper, and to purchase all or any part of the collateral for its own account at any such sale or foreclosure, such power to be exercised only to the extent permitted by law.

The obligations of the Undersigned hereunder shall not be released, discharged or in any way affected, nor shall the Undersigned have any rights or recourse against Lender, by reason of any action Lender may take or omit to take under the foregoing powers.

3. The appellants do not argue that under Indiana law this type of waiver is unenforceable. *See infra* at 237. *See Meadors*, 753 F.2d at 594 (indicating that Indiana would uphold this type of waiver).

what specific facts the SBA was allegedly aware of which should have caused it not to select Edwards as the Caretaker of Richmond Block. The only specific allegation—that a particular metal block recycling process was sold for less than its fair market value to a company in which Edwards had a personal interest—was contained in the appellants' pleadings but was unsupported by Clarence Lair's affidavit or any other evidence. This unsupported contention without more is insufficient to create a genuine issue of material fact as to whether the SBA willfully caused the collateral to deteriorate with the intent of injuring the Lairs. The district court properly granted summary judgment in favor of the government on this issue.

### B.

■ The Lairs' second contention is that they raised a genuine issue of material fact regarding whether the SBA disposed of the Richmond Block Company's assets in a commercially reasonable manner. Although federal law governs cases, such as this one, which involve a nationwide federal program, courts may look to state law to give additional content to federal law. *Meadors*, 753 F.2d at 592 (citing *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726–27, 99 S.Ct. 1448, 1457–58, 59 L.Ed.2d 711 (1979)). The Lairs contend that under Indiana law a guarantor cannot waive its right to a commercially reasonable sale of the collateral.[4]

■ By signing an unconditional personal guaranty the Lairs waived a number of possible defenses. *See, e.g., Kukowski*, 735 F.2d at 1058 (SBA guarantors waive their right to notice of sale of collateral); *United States v. Kyte*, 705 F.2d 967, 969 (8th Cir.1983) (Form 148 waives guarantors' right to contest the manner in which the SBA assesses other guarantors' liability); *Austad*, 386 F.2d at 150 (guarantors not released from liability due to SBA's delay). One of the rights that the Lairs clearly waived under the SBA guaranty is

the right to require the SBA to sell the collateral in a commercially reasonable fashion.[5] *Meadors*, 753 F.2d at 594 (under SBA Form 148 guarantor waives any right to a commercially reasonable sale of the collateral). *See also New Mexico Landscaping*, 785 F.2d at 847 (right to commercially reasonable sale is waived by SBA Form 148); *United States v. Lattauzio*, 748 F.2d 559 (10th Cir.1984) (same). Although the Indiana Commercial Code generally requires creditors to dispose of collateral in a commercially reasonable fashion, under Indiana law a guarantor can waive that right. *See Meadors*, 753 F.2d at 594. *See also Carney v. Central Nat'l Bank of Greencastle*, 450 N.E.2d 1034, 1037–39 (Ind.App.1983).

Because the Lairs waived their right to a commercially reasonable sale of the collateral and their waiver is effective under Indiana law, even if the Lairs could demonstrate that the collateral was not sold in a commercially reasonable fashion those facts could not affect the outcome of the lawsuit. As a result, there cannot be a genuine issue of material fact relating to the commercial reasonableness of the sale of the Richmond Block collateral. *Walter*, 840 F.2d at 434 (to be a *material* fact, the fact must have the ability to affect the outcome of the case). Because the government is entitled to judgment as a matter of law, the district court's grant of summary judgment on this issue was appropriate.

### C.

■ Finally, the Lairs claim that a genuine issue of material fact exists regarding whether the government should be estopped from pursuing them on their personal guaranty. "The affirmative defense of equitable estoppel is not applicable against the government in the same manner as against a private party." *United States v. Bob Stofer Oldsmobile–Cadillac, Inc.*, 766 F.2d 1147, 1151 (7th Cir.1985). In cases involving the United States, estoppel is applicable if the government's actions

---

4. The parties agree that to the extent that any state law is applicable to this matter, the law of Indiana should be applied.

5. *See supra* note 2.

constitute "affirmative misconduct" and if four additional requirements are satisfied. *Pratte v. N.L.R.B.*, 683 F.2d 1038, 1041 (7th Cir.1982).

First, the party to be estopped must know the facts. Second, this party must intend that his [or her] conduct shall be acted upon, or must so act that the party asserting estoppel has a right to believe it is so intended. Third, the party asserting estoppel must have been ignorant of the facts. Finally, the party asserting estoppel must reasonably rely on the other's conduct to his [or her] substantial injury.

*Id.* (quoting *Portmann v. United States*, 674 F.2d 1155, 1167 (7th Cir.1982)). *See also TRW, Inc. v. Federal Trade Commission*, 647 F.2d 942 (9th Cir.1981) (same standard).

The Lairs contend that a genuine issue of material fact exists with regard to the affirmative defense of estoppel because their pleadings and Clarence Lair's affidavit create doubts as to whether Edwards was the SBA's agent and what (if anything) Edwards told the Lairs which they may have relied upon to their detriment. Such generalized "doubts" cannot create a genuine issue of material fact. *See Bob Stofer Oldsmobile–Cadillac*, 766 F.2d at 1152 (summary judgment appropriate where estoppel defense raised, but guarantors failed to allege "any conduct of the SBA that they reasonably relied upon to their substantial detriment."). The Lairs failed to specify what facts the SBA knew at the time of Edwards' appointment, did not indicate what representations Edwards made to them, and failed to allege how they relied on Edwards' representations to their detriment. In fact, the Lairs failed to provide any evidence tending to demonstrate the existence of any of the required conditions for asserting the affirmative defense of estoppel against the government. The district court therefore correctly concluded that no genuine issue of material fact existed regarding the Lairs' estoppel defense. Summary judgment was properly granted in favor of the government.

III.

We conclude that no genuine issue of material fact was raised by the Lairs regarding the SBA's alleged willful acts, the commercial reasonableness of the sale of the collateral, or the affirmative defense of estoppel. The government was entitled to judgment as a matter of law. The district court's order granting the government's motion for summary judgment therefore is AFFIRMED.