Wendell P. TYLER, Plaintiff–Appellant,

v.

Marvin T. RUNYON, Jr., Postmaster General, United States Postal Service, Defendant–Appellee.

No. 94–3221.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1995.

Decided Nov. 14, 1995.

James D. Cottrell, argued, Keith E. Emmons, Dobbins, Fraker, Tennant, Joy & Perlstein, Champaign, IL, for Plaintiff–Appellant.

David H. Hoff, Asst. U.S. Atty., argued, Office of the United States Attorney, Urbana Division, Urbana, IL, Deborah W. Carlson, Suite 1480S, United States Postal Service, Law Department, Chicago, IL, for Defendant–Appellee.

Before CUDAHY and COFFEY, Circuit Judges, and WALTER, District Judge.*

COFFEY, Circuit Judge.

Wendell Tyler filed a complaint seeking declaratory relief and monetary damages arising from the allegedly discriminatory conduct of the United States Postal Service, in violation of the Rehabilitation Act of 1973 (The Act), § 501, 29 U.S.C. § 791, et seq. Although Tyler alleged a violation of § 501 of the Act, he brought his claim pursuant to § 504 of the Act. 29 U.S.C. § 794. Tyler alleged that the Postal Service refused to provide him with training for a window clerk position because of his mental illness (paranoid schizophrenia). The defendant filed a motion to dismiss Tyler's claim for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), and for failure to state a claim upon which relief could be granted, Fed.R.Civ.P. 12(b)(6), or in the alternative, for summary judgment. Because the defendant also submitted matters outside the pleadings in support of his 12(b)(6) motion, such as exhibits, depositions, and affidavits, the court treated the motion as a cross motion for summary judgment, pursuant to Fed.R.Civ.P. 12(b). The district court entered summary judgment in favor of the defendant, finding that Tyler's failure to contact an Equal Employment Opportunity (EEO) counselor within thirty days of the allegedly discriminatory event, as required by 29 C.F.R. § 1613.214(a)(1)(i), barred his claim. Furthermore, even if he had contacted the counselor in a timely manner, he failed to set forth a genuine issue of material fact in support of his discrimination claim. Tyler appeals. We affirm.

## I. FACTS

On July 29, 1987, Wendell Tyler applied for a position at the Rantoul, Illinois Post Office and was interviewed for a job on September 30, 1987. On his application, Tyler disclosed that he had been diagnosed as a paranoid schizophrenic and had undergone both in-patient and out-patient treatment for his condition since 1981. Two months later, on November 30, 1987, Tyler received a letter from Dr. Alfred D. Klinger, the South Suburban Postal Division Medical Officer, informing him that he would have to provide him with "an up to date evaluation of [his] condition by a psychiatrist or psychologist or psychiatrist social worker" before he could make a decision regarding Tyler's potential employment with the Postal Service.

Tyler failed to respond to Dr. Klinger's request and on December 30, 1987, Klinger filed a report with the Office of Personnel Management stating that "based on the incomplete information available [in Tyler's application], Mr. Tyler would have to be considered a moderate medical risk insofar that he would have a problem working with others." On that same day, Tyler, unaware of Dr. Klinger's preliminary recommendation, filed a formal complaint with the Equal Employment Opportunity Commission (EEOC) claiming that the Postal Service was discriminating against him on the basis of his mental handicap. The plaintiff alleged that Dr. Klinger was unnecessarily delaying his decision on whether or not to hire him and that he had no current medical records available because he was no longer under a doctor's care.

On February 26, 1988, Dr. Klinger filed a final report concerning Tyler's condition with the Postal Service's Office of Personnel Management. Since his initial assessment of Tyler on December 30, 1987, Dr. Klinger had received a copy of Tyler's medical files from the Veterans' Administration [1] which detailed his treatment from September, 1984 through January, 1988, for paranoid schizophrenia. Klinger noted in his report that Tyler was

given a preemployment examination by Dr. R.E. Samuelson,[2] Springfield, IL, on 10/19/87. He described Mr. Tyler as para-

---

* Hon. Donald E. Walter, U.S. District Judge for the Western District of Louisiana, is sitting by designation.

1. Tyler served in the Air Force for five years, was diagnosed as suffering from paranoid schizophrenia in 1981, and was first hospitalized in 1984, while still in the service.

2. Dr. Klinger did not specify the nature of Dr. Samuelson's affiliation with the Postal Service, nor did he state Samuelson's area of medical specialty.

noid schizophren[ic] with visual and auditory hallucinations associated with paranoid ideation. He felt Mr. Tyler was a high risk because of this but did not go into any other detail on how this might affect his duty as a [postal] clerk.

Based on this information, Dr. Klinger concluded:

[I]t is my opinion that Mr. Tyler would have a great deal of difficulty working with the public, administrators and other personnel. His moments of paranoia could lead to unpleasant and frightening confrontations which could affect essential functions of his job and the Postal Service in general. It is possible if he were to be on continuous medication and under strict medical supervision he could function adequately. Given his actions in the most recent past [in refusing to remain on medication], I am not optimistic that this can be brought about. I conclude that Mr. Tyler is at least a moderate medical risk and could very well be a high medical risk.

The Postal Service advised Tyler by letter on March 10, 1988, that he was medically unsuitable for postal employment.

On February 17, 1989, the Postal Service entered into a settlement agreement with Tyler concerning his EEOC discrimination complaint. According to the terms of the agreement, the Postal Service paid Tyler a lump sum of $5000, minus state and federal taxes, and agreed to hire him at the Rantoul, Illinois Post Office, where he began employment later that month as a "distribution and window clerk."[3] Although mail carrier duties were generally not part of Tyler's job description, Harry N. Lewis, the Postmaster at Rantoul testified that because Rantoul was such a small post office, clerks often delivered mail in addition to clerking jobs in order that they would be ensured a forty hour work week. Tyler, the most junior employee at the Rantoul Post Office, performed carrier duties as needed and also performed distribution functions. During his deposition, Tyler confirmed that before he began working

at the post office, he was informed that he would have to perform carrier duties on occasion, in order to work a full forty hour week.

Dissatisfied with his mail carrier duties, Tyler requested that his discrimination complaint be reinstated on May 1, 1989, claiming that the Postal Service breached the terms of the settlement agreement when it required him to perform carrier duties and in withholding federal and state taxes from his lump sum settlement, paying him only $3,452.50, instead of the agreed-upon $5,000. On May 16, 1989, the Postmaster General of the South Suburban Division of the Postal Service issued the Service's final agency decision, rejecting Tyler's request to reinstate his complaint, finding that Tyler was appointed to be a part-time flexible clerk, as provided for in the agreement, and that withholding $1547.50 in taxes from his lump sum payment was appropriate because the $5000 was taxable income. Tyler appealed this decision to the EEOC.

While the EEOC was reviewing Tyler's claim that the Postal Service had breached the settlement agreement, the plaintiff sent a letter to Peter McGow, the Officer in Charge at the Rantoul Post Office, on August 24, 1989, requesting that he provide Tyler with window training within 10 days, in order that the plaintiff might be transferred to a window clerk position. McGow responded to Tyler's request by letter, dated August 30, 1989, and notified him that his request for window instruction was denied:

As far as window duties training, at this time, for you within 10 days, as you have officially notified us, please be advised, that will not be accomplished. Training will be given for all work functions that you will be expected to perform as best meets the needs of the service. At this time the Rantoul Office has a sufficient # [number] of window clerks and relief personnel to meet its service needs. Should this situation change we will then reconsider based upon seniority within the office.

---

**3.** A distribution clerk sorts mail according to address and mail carrier and a window clerk deals with the general public, handling window transactions, including sales of postage and packaging, as well as assisting in the mailing of letters and packages for those appearing at the window.

After McGow refused his request, Tyler questioned Postmaster Lewis about why he was being denied window instruction and during his deposition, Tyler testified that Lewis "told me I had to be crazy, that if I thought that he would give me window training, that I must be crazy."

On September 14, 1989, the EEOC determined that the Postal Service had not breached the settlement agreement in view of the fact that he had been hired as a part-time flexible clerk, and also that "the agency correctly deducted taxes from the lump sum award." On October 5, 1989, Tyler requested that the EEOC reconsider its decision concerning his breach of settlement complaint, again arguing that the Postal Service's requirement that he perform carrier duties was in violation of the settlement agreement. Tyler also added a new claim, arguing that the Postal Service's failure to provide him window training was not only a breach of the settlement agreement, but also a violation of the Rehabilitation Act, alleging that he was being denied window instruction solely because of his mental handicap.

On October 23, 1989, before the EEOC ruled on Tyler's latest request to reopen his complaint, Tyler contacted William Washington, an EEO counselor for the Central District of Illinois, to report that he had been discriminated against based on his mental handicap. Washington filed a declaration, pursuant to 28 U.S.C. § 1746,[4] stating that October 23, 1989 was the first time that Tyler made any contact with an EEO counselor regarding a claim of discrimination. Tyler filed a formal complaint of employment discrimination with the EEOC on February 27, 1990, alleging handicap discrimination based on the fact that he was denied window training.

On March 27, 1990, the EEOC found that it was "appropriate under the circumstances of this case to reopen and reconsider its previous decision" concerning whether the Postal Service breached the terms of the settlement agreement and ordered that the Service conduct a supplemental investigation in light of Tyler's discrimination complaint stating that: "the record does not clearly reveal what duties appellant actually performed after being hired in 1989, [and] the Commission finds that the record lacks the necessary information upon which to base a supportable adjudication concerning the breach of the settlement agreement."

The South Suburban Division of the Postal Service investigated the claims of discrimination and breach of settlement and on July 24, 1990, it issued its findings that all part-time flexible clerks at the Rantoul Post Office performed both clerk and carrier duties, that window training was given to clerks in order of their respective seniority in the postal service, only on an as-needed basis, and at that time there was no need for additional window clerks at the Rantoul Post Office. The Postal Service concluded it had fully complied with the terms of the settlement agreement. After Tyler appealed the Postal Service's decision, the EEOC, on November 29, 1990, determined that the Service had not breached the settlement agreement when it required Tyler to perform some carrier duties, because many of the part-time flexible clerks at the Rantoul Post Office were assigned similar carrier duties. The EEOC also concluded that the Postal Service had not breached the agreement by failing to provide Tyler window training because

> other Distribution and Window Clerks were not trained for window duty immediately upon their hire. They were trained according to seniority on an "as needed" basis. One clerk waited six months for such training while another waited as long as 21 months. This Commission finds nothing unusual in appellant being denied window training where the known custom and practice at this post office is to train according to seniority on an "as needed" basis. Appellant has the least amount of seniority among the clerks. Furthermore, the settlement agreement does not guaran-

---

4. 28 U.S.C. § 1746 provides, in relevant part: Whenever ... any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration ... in writing of the person making the same ... such matter may, with like force and effect, be supported ... by the unsworn declaration ... in writing of such person which is subscribed by him, as true under penalty of perjury, and dated[.]

tee appellant a position including window duty. The position description does not state that any percentage of time will be spent on any of the tasks listed including window duty. If appellant had been hired into his present position instead of being awarded it through a settlement agreement, he would be expected to wait until all other clerks with more seniority had been given the opportunity to be trained on an "as needed" basis before it would be his turn to be trained for window duty. The EEOC also noted that if Tyler believed that he was not being trained for window clerk duty because of his mental condition, he should pursue his administrative remedies with respect to a claim of discrimination.

Tyler had previously instituted the administrative process when he contacted Washington, the EEO counselor, on October 23, 1989 and he filed a formal complaint of discrimination on February 27, 1990. After the Postal Service authorities conducted a formal investigation concerning the plaintiff's claim of discrimination, the South Suburban Division of the Service sent Tyler a letter dated November 7, 1990, informing him that it found his claims of handicap discrimination to be without merit since the decision to refuse him window training was "based on the current service needs of the Rantoul, IL Post Office." Thereafter, on December 17, 1990, Tyler filed this action claiming he was a victim of unlawful handicap discrimination and claiming he was denied window training due to his condition of paranoid schizophrenia in violation of §§ 501 & 504 of the Rehabilitation Act of 1973. 29 U.S.C. §§ 791 & 794.

The Postmaster General filed an answer to Tyler's complaint, alleging that the district court was without subject matter jurisdiction for Tyler had failed to exhaust his administrative remedies with respect to his claim of discrimination in that he did not contact an EEO counselor within thirty days of receiving McGow's letter, as required by 29 C.F.R. § 1613.214(a)(1)(i). On January 24, 1994, the Postmaster filed a motion to dismiss, or in the alternative for summary judgment, alleg-ing lack of subject matter jurisdiction and that Tyler's complaint failed to state a cause of action upon which relief could be granted.

On August 16, 1994, the district court granted the Postmaster's motion for summary judgment, finding that Tyler's complaint was barred by the statute of limitations, ruling that he failed to contact an EEO counselor within thirty days of receiving McGow's letter denying his request for window training, and finding that Tyler presented no evidence in support of his argument that the statute should be equitably tolled, other than his mere assertions that he attempted to contact Mr. Washington, the EEO counselor. The court further found that Tyler's mental condition did not render him incompetent to comply with the time period. The court also determined that even if Tyler had complied with the EEOC deadlines, summary judgment would be appropriate because the Postal Service provided a legitimate, nondiscriminatory reason for denying Tyler window training, i.e., he was the most junior employee at the Rantoul Post Office and there was no need to train additional window clerks. In so finding, the court noted that Tyler failed to present any specific factual allegations creating a genuine issue of material fact with respect to the Postal Service's proffered reason for not training him to be a window clerk.[5] Tyler appeals the grant of summary judgment.

## II. ISSUES

Tyler's appeal raises the following issues: (1) whether the district court erred when it found that Tyler's claim was time barred because he did not establish grounds for equitable tolling of the thirty day limitations period in which a complainant must contact an EEO counselor; (2) whether the Postal Service should be equitably estopped from asserting Tyler's failure to timely contact an EEO counselor because it waited over three years from Tyler's complaint to file a motion for summary judgment; (3) whether the district court erred when it found that there

---

5. The court also found that the Postal Service did not breach the settlement agreement by deduct-ing taxes from Tyler's $5000 settlement payment, but Tyler does not appeal this issue.

was no genuine issue of material fact in support of Tyler's claim of discrimination.[6]

## III. DISCUSSION

### A. Standard of Review

"We review the district court's grant of summary judgment *de novo,* drawing all reasonable inferences from the record in the light most favorable to the non-moving party." *Johnson v. Runyon,* 47 F.3d 911, 917 (7th Cir.1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)). A motion for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "If no reasonable jury could find for the party opposing the motion, it must be granted." *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir.1995) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510). "Conclusory allegations by the party opposing the motion cannot defeat the motion." *Id.* The non-moving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### B. Equitable Tolling

■ Initially, Tyler makes the bald, self-serving assertion, designed to circumvent the very intent of the statute of limitations, that

he made efforts to contact Mr. Washington, the Postal Service's EEO counselor, within the thirty-day time limit but was unable to reach him. Tyler further posits that his mental illness was so severe that he was rendered incompetent to comply with the statute of limitations. Although Tyler's counsel does not designate the argument as such, we interpret Tyler's brief to be asking us to equitably toll the statute of limitations.

■ Federal Rule of Appellate Procedure 28(a)(5) requires "*citations to the authorities, statutes,* and parts of the record relied on" in support of arguments on appeal. (Emphasis added). "We have made it clear that a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point." *Doe v. Johnson,* 52 F.3d 1448, 1457 (7th Cir.1995) (quotation omitted).

Tyler, who was represented by counsel, cites to neither case law nor statutory authority for his equitable tolling argument, not even 29 C.F.R. § 1613.214(a)(1)(i), the regulation providing the thirty-day statute of limitations for contacting an EEO counselor. The three Seventh Circuit cases that the plaintiff does reference in his brief, *Weihaupt v. American Medical Association,* 874 F.2d 419 (7th Cir.1989); *Billups v. Methodist Hospital of Chicago,* 922 F.2d 1300 (7th Cir. 1991); and *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120 (7th Cir.1994), each address the issue of when a plaintiff has established that an employer's legitimate non-discriminatory reason for an employment action is pretextual. *See,* Section III.D, *infra.* Thus, these cases are not relevant to the issue of equitable tolling of the statute of

---

6. Tyler's cause of action included a claim that the Postal Service violated § 504 of the Rehabilitation Act. 29 U.S.C. § 794. Although the district court did not address the issue of whether § 504 authorizes individual claims by federal employees against federal agencies, the defendant briefed this issue on appeal. Because we hold that there is no genuine issue of material fact to preclude granting the Postmaster General's motion for summary judgment, as we will discuss *infra,* we need not reach the § 504 issue to decide the case before us.

We do note, however, that we agree with Seventh Circuit precedent that it is doubtful that

"§ 504 applies to employment discrimination suits against federal agencies." *McWright v. Alexander,* 982 F.2d 222, 225 (7th Cir.1992); *Overton v. Riley [Reilly],* 977 F.2d 1190, 1193 (7th Cir.1992); *McGuinness v. United States Postal Serv.,* 744 F.2d 1318, 1321 (7th Cir. 1984) ("[I]t is unlikely that Congress, having specifically addressed employment of the handicapped by federal agencies ... in Section 501, would have done so again a few sections later in Section 504"). *Johnson v. Runyon,* 47 F.3d 911, 917 n. 5 (7th Cir.1995).

limitations, and, in our opinion, do not satisfy the requirements of Fed.R.App.P. 28(a)(5).

The concurring judge is of the opinion that although Tyler's argument on this issue is "rather elliptical," he has not waived it for appeal since he made reference to the record and cited caselaw to support the standard of review for summary judgment. It is true that Tyler referenced the record on appeal (his memorandum of law in opposition to the motion for summary judgment and the district judge's order granting summary judgment); however, not one of the four cases cited by Tyler's counsel deals with an equitable tolling issue, none concerns employment discrimination cases, and all are from jurisdictions other than the Seventh Circuit.[7] Although Tyler's counsel does cite to Fed. R.Civ.P. 56(c), the general rule governing summary judgment, we are of the opinion that counsel's mere citation of the rule fails to preserve the merits of this issue for appeal.

> Although we could search through the summary judgment record ... if we did this we would be stepping outside the proper judicial role in an adversarial system. This court is not equipped to act as auxiliary lawyer for a party to an appeal. The responsibility for the identification, framing, and argument of the issues on appeal is that of the lawyers, not that of the judges. If we assume the lawyers' responsibilities, we unbalance the market for legal services and take time away from

our consideration and decision of other cases. So, if an appellant fails to make a minimally complete and comprehensible argument for each of his claims, he loses regardless of the merits of those claims as they might have appeared on a fuller presentation. At least this is true in civil cases, where there is no constitutional or other right to competent representation.

*Luddington v. Indiana Bell Telephone Co.,* 966 F.2d 225, 230 (7th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 1641, 128 L.Ed.2d 362 (1994).

Because Tyler has waived this argument on appeal by failing to cite to any authority in support of his argument that the statute of limitations should be equitably tolled, we see no necessity to engage in a discussion of the merits of this issue.[8]

## C. *Equitable Estoppel*

■ Tyler's next argument is that because he originally filed his cause of action in 1990, and the defendant did not file its motion for summary judgment until March of 1994, the Postal Service should be equitably estopped from asserting a statute of limitations defense. Tyler's entire argument on this matter follows:

> Statutes of limitations are designed to protect potential defendants from having to defend claims where evidence has become stale. Clearly that is not the case here. The Defendant had all of the information concerning Mr. Tyler's contacts or at-

---

7. *United States v. Porter,* 581 F.2d 698 (8th Cir. 1978) (regarding when the regulations of the Small Business Association would release a defendant from liability for guaranty loans); *Jones v. Nelson,* 484 F.2d 1165 (10th Cir.1973) (genuine issues of material fact existed in a personal injury diversity action, concerning the negligence of the driver of a car who passed a truck on a highway, and collided with the truck after a tire blow-out); *Ozark Milling Co. v. Allied Mills, Inc.,* 480 F.2d 1014 (8th Cir.1973) (whether Ozark entered into an oral contract with Allied to become a hog feed distributor); and *Commodity Futures Trading Commission v. American Metals Exchange Corp.,* 775 F.Supp. 767 (D.N.J.1991) (what constitutes fraud under the Commodity Exchange Act, and which states have jurisdiction to prosecute for violations of the same).

8. We agree with the concurring judge that Tyler would not prevail on the merits of this issue.

Equitable tolling should be exercised "only sparingly," and not in cases "where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin v. Veteran's Admin.,* 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990). Although Tyler stated that he made a number of attempts to contact an EEO counselor in a timely manner, there is no evidence as to the dates or times of the alleged phone calls, such as messages he left or any record of the calls. Furthermore, Tyler has failed to present any medical evidence or hospital records to establish that his mental condition prevented him from contacting a counselor within thirty days of receiving McGow's letter. The plaintiff was not a novice and had prior experience with filing EEO complaints, and was thus well aware of the administrative requirements, including, but not limited to, the thirty day time limit to contact an EEO counselor.

tempted contacts with EEOC personnel prior to the filing of the lawsuit, and for the trial court now to hold that the Defendant is not equitably estopped from raising this defense, can only be considered inappropriate in the extreme.

■■■ "This argument is raised in a short conclusory paragraph which contains no substantive argument, legal citations, or references in the record. This court has no duty to research and construct legal arguments available to a party," especially when he is represented by counsel. *Salazar v. City of Chicago*, 940 F.2d 233, 242 (7th Cir.1991); *see also Head Start Family Educ. v. Co-op Educ. Serv.*, 46 F.3d 629, 635 (7th Cir.1995). As we noted in Section B, *supra*, arguments not supported by pertinent authority or reference to the record are waived on appeal. Fed.R.App.P. 28(a)(5); *Doe*, 52 F.3d at 1457. "We add, should anyone think us too quick to sacrifice substantive justice on the altar of administrative convenience ... that a quick perusal of the record has brought to light no indications that the district judge committed any error" when it ruled on the issues of equitable tolling and equitable estoppel.[9] *Luddington*, 966 F.2d at 230.

### D. *Evidence of Pretext*

■■ Tyler's final argument is that he presented sufficient evidence of the Postal Service's discriminatory intent in denying him window training that his claim should have survived summary judgment. The defendant explained that Tyler was denied window instruction because there was no need for any additional window clerks at that time, and the Postal Service had a policy of only training for window duty on an "as needed" basis, and it also had a policy of selecting clerks for training in order of seniority. At the time Tyler requested window training, he was the most junior employee on the list of clerks eligible for window duty; thus, even if there had been a need to train a window clerk, Tyler would not have been selected in August of 1989. Tyler argues that the Postal Service's explanation was pretextual because when he asked Postmaster Lewis why he was not being trained, he alleged that Lewis told him he would have to be "crazy" to think that he would get window instruction. Additionally, Tyler alleges that personnel junior to him were trained for window duties.

The district court granted summary judgment in favor of the Postal Service, finding that:

The "crazy" comment is ambiguous at best because it could refer to the Postal Service's policies regarding seniority and need-based training. It is not the sort of specific factual allegation sufficient to create a genuine issue of material fact that the Postal Service's business justification is a pretext.... Similarly, the plaintiff's allegation that less senior clerks received window training is utterly without corroboration, and self-serving testimony, standing alone, is also not sufficient to create a genuine issue of material fact as to pretext.... The plaintiff also contends that his hiring as a distribution window clerk is sufficient to create a material issue of fact that he was hired as a window clerk. The

---

9. Equitable estoppel, "quite distinct from equitable tolling, comes into play when a defendant takes active steps to prevent the plaintiff from suing in time," such as promising not to plead the statute of limitations. *Chakonas v. City of Chicago*, 42 F.3d 1132, 1136 (7th Cir.1994); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51 (7th Cir.1990), *cert. denied*, 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). In cases involving the United States, estoppel is applicable if the government's actions constitute affirmative misconduct and if four additional requirements are satisfied. First, the party to be estopped must know the facts. Second, this party must intend that his [or her] conduct shall be acted upon, or must so act that the party asserting estoppel has a right to believe it is so intended. Third, the party asserting estoppel must have been ignorant of the facts. Finally, the party asserting estoppel must reasonably rely on the other's conduct to his [or her] substantial injury. *United States v. Lair*, 854 F.2d 233, 237–38 (7th Cir.1988) (citations and quotations omitted).

Tyler does not contend that the Postmaster General prevented him in any way from contacting an EEO counselor or misled him about the applicable time limitations. "One who decides to follow a schedule of his own devising, for reasons of his own invention, has no legitimate complaint when the tribunal adheres to the rules." *White v. Bentsen*, 31 F.3d 474, 476 (7th Cir.1994) *cert. denied sub nom.*, *White v. Rubin*, —— U.S. ——, 115 S.Ct. 1426, 131 L.Ed.2d 309 (1995).

plaintiff has not, however, been able to produce any evidence that the defendant's explanation for that designation on [his employment] form is a pretext for discrimination.

■ Because "the remedies, procedures and rights available under the Rehabilitation Act are the same that are afforded under Title VII," *McGuinness*, 744 F.2d at 1320, a plaintiff suing under the Rehabilitation Act may "rely on ... the burden-shifting method borrowed from Title VII cases and originally established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 400 (7th Cir.1992).

This method places the initial burden on the plaintiff to establish a prima facie case.[10] If the plaintiff clears this hurdle, the burden of production (not proof—that remains with the plaintiff throughout) shifts to the defendant, which must articulate a legitimate, non-discriminatory reason for the employee's discharge. If the defendant succeeds, the ultimate burden is with the plaintiff, who must prove that the employer's proffered reason is a mere pretext for discrimination. To expose the employer's reason as forming a mere pretext for discrimination, the plaintiff may show that a discriminatory reason was more likely to have motivated the employer than the reason given, or that the employer's explanation is not credible.

*Id.*, (citations and quotations omitted); *see also Weihaupt*, 874 F.2d at 426–27. "Ultimately, the plaintiff's evidence must show that [he] would not have been fired 'but for' [his handicap]." *Billups*, 922 F.2d at 1303.

■ To avoid summary judgment, the plaintiff must present evidence from which a "rational trier of fact could reasonably infer that the defendant had fired the plaintiff because the latter was a member of a protected class." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir.1994) (citing

*Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 658 (7th Cir.1991)). "Although we must, for purposes of summary judgment review, draw any inferences from the record in favor of [the plaintiff], we are not required to draw every conceivable inference from the record. We need draw only reasonable ones." *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 886 (7th Cir.1989). "Thus, the ultimate burden is on [the plaintiff] to show that there is some genuine issue as to whether the stated reasons form a pretext for ... discrimination." *Anderson*, 965 F.2d at 401. The plaintiff can accomplish this "by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Id.* at 402. "The district court must ... make a judgment as to whether the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1570 (7th Cir.1989) (citations omitted, emphasis in original). "If not, the court must grant the employer's motion for summary judgment." *Id.*

We begin our analysis with the prima facie case of discrimination. *Gilty*, 919 F.2d at 1251. Tyler was hired as a part-time flexible clerk, whose title was "window and distribution clerk." Thus, we will assume that he was eligible and qualified for the position of window clerk. Furthermore, it is undisputed that as a paranoid schizophrenic, Tyler was in a class of people protected by the Rehabilitation Act. Finally, the plaintiff was denied window training. Thus, he has established the first three elements of the prima facie case. However, Tyler must also establish that after he was denied instruction for the window clerk position, the Postal Service continued to seek applicants for the same position. The evidence does not bear this element out, for it is undisputed that at the time Tyler requested preparation as a window clerk, the Post Office at Rantoul had no

10. In order to establish a prima facie case of discrimination, a plaintiff must prove that he belonged to a class of persons protected by the Rehabilitation Act, that he applied for and was qualified for the job in question, that he was rejected despite his qualifications, and that the

position remained open and the employer continued to seek applicants after rejecting the plaintiff. *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1251 (7th Cir.1990) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824).

opening, thus no need for any replacement window clerks, and it was not training anyone for that position.

Even had Tyler established a prima facie case of discrimination, his claim would still be appropriate for summary judgment because the Postal Service produced a legitimate non-discriminatory reason for not training Tyler, (*i.e.*, that there was no need for a window clerk and Tyler was low on the seniority list) and the plaintiff-appellant has failed to prove that the Service's explanation was pretextual. Neither party disputes the fact that Tyler was the most junior employee eligible for window instruction, or that the Service's policy was to train window clerks only on an "as needed" basis. However, there was no need for additional window clerks at the Rantoul, Illinois Post Office in August of 1989 and because of the time and expense involved in providing window training,[11] the Post Office refused to train Tyler for a non-existent position. The Postal Service met its burden of producing a legitimate, non-discriminatory reason for denying Tyler window training.

In his attempt to demonstrate pretext, Tyler offers only his unsupported assertion that employees with less seniority were provided window training, and Postmaster Lewis's alleged remark "that if I thought that he would give me window training, that I must be crazy." Tyler presented no additional evidence to substantiate that Lewis made this statement, and the plaintiff's attorney failed even to question Lewis about it during Lewis's deposition. Even if we accept that this statement was made, it was spoken three months after Tyler was denied window training, and after Tyler had been advised several times that he would not be provided instruction until a need for more window clerks arose, and his name came up on the seniority eligibility list. We agree with the district court that Lewis's isolated comment, if it was even made, "is ambiguous at best." "Crazy" could easily have referred to Tyler's chances of getting immediate window training, which were nil, because of his lack of seniority.

Tyler also asserts that he assumed that he would be provided with window training as part of his settlement agreement, but once again, all we have are Tyler's self-serving, unsupported statements as evidence of such a promise. He has produced no written document memorializing such terms and Tyler's "own self-serving remarks standing alone are insufficient to raise doubt as to the credence of the employer's explanation for [the alleged discriminatory action]." *Billups,* 922 F.2d at 1303 (citing *Weihaupt,* 874 F.2d at 428). Not once in his deposition or in any of the documents he filed with the District Court or this court, does Tyler name a single person who promised him window training, or even implied that he would be given such instruction, absent a need for more window clerks. All Tyler relies on is his "understanding that I would be a distribution and window clerk.... [I] assume[d] if I'm appointed to the position, that I would be given all of the duties of the position." However, Tyler conceded that when he signed the settlement agreement, neither he nor his attorney went "into any detail" with the Postal Service Representatives about the specific duties of a distribution window clerk. Madonna Butwin, the United States Postal Service Representative who drafted the settlement agreement, testified during her deposition that at the time the agreement was drafted and signed, there was no discussion whatsoever with either Tyler or his attorney concerning window training.

Furthermore, although Tyler claims that employees junior to him were trained for window duties, his statement is contradicted by undisputed documentary evidence presented by the defendant showing that Tyler was the least senior employee at the Rantoul Post Office at the time he was denied window training. The plaintiff-appellant Tyler offered no evidence in support of his allegation that junior employees were trained ahead of him other than to allege that a postal employee who was transferred to the Rantoul Post Office was provided window instruction but Tyler presented no evidence

---

**11.** During his deposition, Postmaster Lewis stated that window training required 120 work hours for the trainee, and that the trainer was required to stand by and observe the trainee during the on-the-job training.

that this employee was junior to him. "[S]uch speculation does not meet a party's burden of producing some defense to a summary judgment motion." *Hedberg,* 47 F.3d at 931–32. "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Id.* at 932.

Additionally, Postmaster Lewis explained during his deposition that if a clerk was transferred from another Post Office where they had previously been trained for window duty, he or she was then placed on window clerk duty "to keep them current ... and not to lose that experience" of his or her prior training. Thus, it is possible that if Tyler thought that junior employees were being trained, they were actually transferred employees who were in fact senior to Tyler in their tenure with the Service, and merely exercising their previous training in order that they not lose their window skills.

In light of the facts enumerated in this discussion, we hold that no reasonable factfinder could infer that "but for" Tyler's mental condition, *Billups,* 922 F.2d at 1303, the Postal Service would have prepared him to be a window clerk, for Tyler's evidence of discrimination does not rebut the Postal Service's legitimate, non-discriminatory reason for refusing to provide such training.

AFFIRMED.

CUDAHY, Circuit Judge, concurring.

Although I certainly agree that Mr. Tyler's rather elliptical equitable tolling argument is a clear loser, it is not so deficient as to waive the point. If the miscitation of a case or two were a waiver, our work would be greatly simplified, but this, unfortunately, stretches the Rules beyond their intended purpose.