79 F.3d 1150
 77 A.F.T.R.2d 96-1526, 96-1 USTC P 50,215,
Pens. Plan Guide P 23919X
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
William L. MEYERS and Mary R. Meyers, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 95-1542.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 20, 1996.*
Decided March 13, 1996.
Rehearing Denied April 29, 1996.
 
 Before PELL, FLAUM and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 William and Mary Meyers (collectively "the Meyers") appeal the Tax Court's finding of deficiency based on their ineligibility to average the taxes on a lump sum distribution from a pension plan. The Meyers created an approved tax-exempt pension and profit sharing plan and trust (plan) in 1978 for themselves and one employee. Time passed and tax laws were changed, but the Meyers did not amend the plan to conform with new tax law. They realized the need to amend their plan in the summer of 1987 when their employee quit, and wrote to the Internal Revenue Service (IRS) for advice in December 1987.
 
 
 2
 The IRS notified the Meyers on January 4, 1988, that the plan's vesting schedule was inadequate and suggested that the Meyers terminate the plan and rollover the distribution into an individual retirement account. The IRS further advised the Meyers to act soon to avoid adverse consequences from untimely amendments to the plan and to obtain legal advice from a practicing attorney. The Meyers called the IRS and wrote back several times expecting further assistance. The Meyers stated that they would wait until certain forms had been mailed to them before taking any action and sent a copy of the plan to the IRS to review and to further advise them. In short, the Meyers sought free legal advice but did not act to amend the plan. On March 21, 1990, the IRS issued a final revocation letter retroactively revoking the plan's qualified status and tax-exempt status for the years ending August 31, 1985, August 31, 1986, August 31, 1987, August 31, 1988, and August 31, 1989.
 
 
 3
 The Meyers then conferenced with an agent from the IRS, Ralph Roberts, and claim that an agreement was reached whereby no penalties would be assessed against them and only three years (1985-1987) would be disqualified from tax-exempt status. Assuming the plan would retain its tax-exempt status in 1989, the Meyers believed that they were eligible to average the taxes from a lump-sum distribution over ten years pursuant to I.R.C. § 402(e) (1989). Accordingly, the Meyers took a lump sum distribution of $95,564 and reported on their joint income tax returns a distribution of only $61,016. An IRS audit noted the discrepancy, declared the Meyers ineligible to average the taxes from the lump sum distribution because the plan was not approved for tax-exempt status in 1989, and issued a notice to the Meyers for a tax deficiency of $22,438.[1] The Meyers contested this deficiency before the Tax Court who found in favor of the government. The Meyers now appeal arguing that they were victimized by Roberts' misrepresentations and the IRS' denial of his agreement.
 
 
 4
 The Internal Revenue Code allows the taxes from lump-sum distributions from qualified pension plans to be averaged over five or ten years. I.R.C. § 402(e)(1) (1989)[2]. However, the plan must be exempt from tax under section 501 or from a plan described in section 403(a). I.R.C. § 402(e)(4)(A). Because the IRS revoked the plan's tax-exempt status for 1989, the taxes on the 1989 distribution did not qualify to be averaged over ten years. I.R.C. § 402(e)(4)(B) (1989); see also Benbow v. Commissioner of Internal Revenue, 774 F.2d 740 (7th Cir.1985) (plan's tax status determined by date of distribution). The Meyers argue, however, that the government should be bound by the Roberts accord which would entitle them to average the taxes from the distribution; they also claim that the Tax Court unjustly denied them the opportunity to present evidence that the agreement existed. Even if we assume that the agreement existed as the Meyers described, it is not enforceable.
 
 
 5
 The Meyers have sought to equitably estop the federal government because of the alleged actions of agent Roberts. However, in tax cases, only a private letter ruling or a closing agreement will create a binding agreement. See generally Jacob Mertens Jr., Mertens Law of Federal Income Taxation § 60, et. seq. This is because one of the requisite elements to establish estoppel is that the taxpayer reasonably relied on the representations of the IRS agent. See United States v. McGaughey, 977 F.2d 1067, 1074 (7th Cir.1992) cert. denied, 113 S.Ct. 1817 (1993); Kennedy v. United States, 965 F.2d 413, 417 (7th Cir.1992).
 
 
 6
 As a Revenue Officer, Roberts was not authorized to enter into a binding agreement with the Meyers. Urso v. United States, 72 F.3d 59 (7th Cir.1995); Kennedy, 965 F.2d at 419-20. The Meyers were charged with knowing Roberts' limited authority so they cannot demonstrate that their reliance was reasonable. Heckler v. Community Health Servs., 467 U.S. 51, 63, 104 S.Ct. 2218, 2225 (1984); Urso, 72 F.3d at 60 ("Apparent authority is not enough to bind the federal government to a contract; unless the agent had actual authority, any agreement is ineffectual."). Since only a private letter ruling or a closing agreement by authorized agents bind the government, and because the Meyers did not obtain such documentation, their estoppel claim fails. The decision of the Tax Court is therefore
 
 
 7
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 The record does not explain how these figures were determined. Nonetheless, the computation of the amount owed by the Meyers is not an issue on appeal
 
 
 [2]
 The Tax Reform Act of 1986 replaced the 10-year forward averaging method with a 5-year forward averaging method for lump sum amounts distributed after Dec. 31, 1986, in taxable years ending after such date. Tax Reform Act of 1986, Pub.L. 99-514, sec. 1122(a)(2), (h)(1), 100 Stat. 2085, 2466, 2470-71; see also 26 U.S.C. § 402 nt. However, Tax Reform Act of 1986, §§ 1122(h)(5) and 1124 provide transitional rules under which lump sum distributions made after Dec. 31, 1986, will nevertheless continue to qualify, under certain limited circumstances, for the more generous 10-year forward averaging method. 100 Stat. 2085, 2471, 2475; see also CCH, 1992 U.S. Master Tax Guide p 2153 (75th ed. 1991)