Bernard **SEEGERS** and Dean
Seegers, Plaintiffs,

v.

**PIONEER HI–BRED INTERNATIONAL,
INC., Defendant.**

No. 2:96–CV–571–RL–2.

United States District Court,
N.D. Indiana,
Hammond Division.

March 4, 1998.

Herbert S. Lasser, Nathaniel Ruff, Merrillville, IN, for Plaintiffs.

Deborah S. Baker, Barnes and Thornburg, Indianapolis, IN, for Defendant.

### ORDER

LOZANO, District Judge.

This matter is before the Court on Pioneer Hi–Bred International, Inc.'s Motion for Summary Judgment, filed on December 1, 1997. For the reasons set forth below, this motion is **GRANTED;** however, the case remains pending as to Defendant's counterclaim.

### BACKGROUND

A crop of seed corn was damaged. In this diversity case, two farmers and a seed company are disputing who is responsible. The farmers are the Plaintiffs, Bernard and Dean Seegers. The company is the Defendant, Pioneer Hi–Bred International, Inc. ("Pioneer").

Some basic facts appear undisputed. The Seegers and Pioneer entered into a written contract under which the Seegers would grow seed corn for Pioneer. Essentially, Pioneer would supply the seed to grow the seed corn, the Seegers would grow it, and then they would deliver the crop to Pioneer. As agreed, the Seegers planted the seed corn crop. After seed corn plants appeared, the Seegers applied a pesticide called "Accent" to fight grass (considered a pest) that was encroaching on the plants. The Accent harmed the plants and reduced the crop yield.

The Seegers claim that they acted upon Pioneer's instruction in applying the Accent, making Pioneer responsible for the reduced yield. Pioneer has filed a counterclaim asserting that under the contract, the Seegers are responsible for any damage caused by pesticides, and thus responsible to Pioneer for the reduced yield.

### DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir.1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson,* 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas de Occidente,* 28 F.3d 572, 583 (7th Cir.1994).

Judging from their complaint, the Seegers' theory of recovery is that Pioneer breached the contract between them. The parties agree that Iowa law governs, but they also agree that Indiana law is the same as Iowa law in all relevant aspects, and the parties rely chiefly on Indiana law. Accordingly, the Court will look to Indiana law.

The question here is primarily one of interpreting the contract between Pioneer and the Seegers:

> Where the terms of a contract are clear and unambiguous, the terms are conclusive and [a court] will not construe the contract, or look at extrinsic evidence, but will merely apply the contract provisions. A contract is not ambiguous merely because the parties espouse different interpretations of the terms. A contract is ambiguous only if reasonable people reading the contract would differ as to the meaning of the terms.

*Stout v. Kokomo Manor Apts.*, 677 N.E.2d 1060, 1064 (Ind.Ct.App.1997) (citations omitted).

■ In addition, if "a contract is ambiguous or uncertain and its meaning is to be determined by extrinsic evidence, its construction is a matter for the factfinder. If, however, an ambiguity arises because of the language used in the contract and not because of extrinsic facts, its construction is purely a question of law to be determined by the court." *Robinson v. Century Personnel, Inc.*, 678 N.E.2d 1268, 1270 (Ind.Ct.App. 1997) (citations omitted).

■ Pioneer argues that the following provision of the contract established that the Seegers alone were responsible for deciding whether to use a pesticide, and responsible for any consequences of using one:

> The Grower [the Seegers] shall furnish and apply such fertilizer and Company [Pioneer] approved pesticides as Grower, in consultation with Company, deems necessary to control weeds, soil insects, and cutworms, and to produce optimum yield and quality and to [sic] accept full responsibility for performance of such materials both to this crop and any succeeding crops. Grower agrees to permit the Company at its discretion and expense to apply or hire commercial applicators to apply properly labeled insecticides and/or properly labeled fungicides for control of foliar insects and leaf diseases. NO APPLICATION OF PESTICIDES WILL BE MADE WITHOUT FIRST CONTACTING THE COMPANY AT LEAST 24 HOURS IN ADVANCE TO OBTAIN APPROVAL OF THE PESTICIDE TO BE USED. The Grower agrees to comply with the rules and regulations relevant to pesticide application, including without limitation, the Worker Protection Standards for Agricultural Pesticides.

The Seegers argue that this pesticide provision did not govern the facts involved here.

They assert that they did not themselves "deem necessary" the use of Accent after "consulting with" Pioneer. Rather, "scouts" from Pioneer checked the field and told Bernard Seegers that the grass was too high and to call a Pioneer representative, Mark Letsinger, to ask what to do about it. Bernard called Letsinger, who asked how high the grass was. Bernard told him, and Letsinger told Bernard to use Accent. The Seegers did not think the Accent was necessary, but they did not tell Pioneer that and went ahead and did what Letsinger said. In short, according to the Seegers, the scenario envisioned by the pesticide provision did not occur. Rather, the Pioneer scouts identified a problem, they told the Seegers to call the Pioneer representative to determine what to do, and that representative decided that Accent should be used and instructed the Seegers to use it.

Pioneer insists that this argument ignores the scope of the pesticide provision. According to Pioneer, that provision establishes that the Seegers alone had authority to ultimately decide whether to use a pesticide, and were alone responsible for the consequences of pesticide use. Under this reading, the pesticide provision leaves no room for a scenario where Pioneer ultimately decides whether to use a pesticide.[1]

■ The Seegers try to find such room in another provision: "The Grower agrees that the Company shall have the right, at all times, to enter upon the seed field and premises of the Grower for purposes of inspecting, roguing, detasseling, harvesting, and ascertaining that the instructions and directions of the Company and the provisions of the contract are being complied with." According to the Seegers, this entry provision gave Pioneer authority to issue virtually any type of instruction to the Seegers directing how to tend the crop. Under this broad provision, Pioneer had authority to instruct the Seegers to use certain pesticides, Letsinger did exact-

---

1. The careful reader may wonder about the part of the pesticide provision that speaks of Pioneer initiating and supervising use of "properly labeled insecticides and/or properly labeled fungicides for control of foliar insects and leaf diseases." It seems implicit in the parties' arguments that this language about insecticides has no effect on the language about pesticides, that the two products are categories unto themselves. The Court accepts this implicit interpretation.

ly that, and the Seegers followed Letsinger's instructions.

After considering these points, the Court concludes that the contract is unambiguous and favors Pioneer. This is not a case where "reasonable people reading the contract would differ as to the meaning of the terms." *Stout,* 677 N.E.2d at 1064. The pesticide provision specifically sets out who ultimately decides to use pesticides and who bears the consequences of such a decision. Not only is the provision specific, it is exclusive. Nowhere else does the contract mention use of pesticides.

■ The Court is mindful that the pesticide provision does give Pioneer a sort of right of refusal. The grower must contact Pioneer twenty-four hours before applying a pesticide to "OBTAIN [Pioneer's] APPROVAL." This language means that even if the Seegers had wanted to use a certain pesticide, Pioneer could have said "no." This no doubt gives Pioneer a measure of power over pesticide use. But it is not the same power as the power to order the grower to use a certain pesticide.

The Seegers' argument that the entry provision gave Pioneer authority to order them to use pesticides is not convincing. That provision gives Pioneer a general right to enter the field and premises to perform inspections and other specific tasks, and to ascertain whether any instructions it had authority to give are being followed. The provision does not clearly give Pioneer the authority to issue any instruction it sees fit. Even if it did give that authority, it would do so only in a vague sense, not a sense concrete enough to override the pesticide provision's specific allocation to the grower of decision-making authority and responsibility regarding pesticides.

Besides citing the entry provision, the Seegers assert that the contract as a whole put Pioneer in the position of calling the shots on growing the seed corn. Yet Seegers do not point to any specific language. In any event, the Court has reviewed the contract. It does carve out a role for Pioneer to participate directly in growing the seed corn. However, the role is a collaborative one, not one of ultimate authority on every aspect. This general collaborative role does not override the pesticide provision so as to give Pioneer the ultimate authority to unilaterally instruct the grower to use a pesticide.

■ Close examination of the Seegers' claim also bolsters the ruling here. Although they claim breach of contract, the Seegers have not clearly identified what part of the contract Pioneer supposedly breached. As covered, the Seegers do argue that the contract required them to follow any "instructions and directions" that Pioneer gave to apply a pesticide, that Pioneer instructed them to apply the Accent, and that they followed that instruction. But the Seegers do not explain how their following instructions that Pioneer was authorized to give (by the Seegers' reading) amounted to Pioneer breaching the contract. Essentially, the Seegers' claim here is that Pioneer gave them bad advice in telling them to use the Accent, an untested product. Assuming Pioneer did give such advice, what exactly is the provision in the contract that Pioneer thereby "breached"? What term of the contract obligated Pioneer to give good advice, or even good "instructions" as the Seegers would term things? The Seegers have not answered these questions. They do toss around the term "negligence" in their brief, but they have not clearly spelled out a negligence theory of recovery in either the brief or their complaint.

The Seegers offer extrinsic evidence to show that Pioneer really ran everything, micromanaging how they tended the crop, including matters like pesticide use. The Seegers do not explain in legal terms what permits the Court to consider this extrinsic evidence of the terms of their contract. In any event, as a general proposition a court need not and should not consider extrinsic evidence of a contract's terms if the contract is unambiguous, as this Court has deemed the present contract. *Stout,* 677 N.E.2d at 1064.

The Seegers also offer a half-hearted unconscionability argument. Unconscionability is a rarely successful defense to enforcement of a contract, *Peoples Trust and Savings Bank v. Humphrey,* 451 N.E.2d 1104, 1110

(Ind.Ct.App.1983), (remember that the Seegers are the plaintiffs here), and without more conscientious briefing from the Seegers, the Court will not consider this argument, *see Tyler v. Runyon,* 70 F.3d 458, 464–65 (7th Cir.1995). In any event, the Seegers' "unconscionability" argument seems to be that the contract gave Pioneer the ultimate authority to decide whether to use a pesticide, but required the Seegers to suffer any adverse consequences of pesticide use. As already covered, the contract did not give Pioneer this power.

The Court is mindful of the Seegers' assertion that they believed Pioneer had authority under the contract to control every aspect of growing the seed corn. The dilemma the Seegers say they found themselves in perhaps would not be a comfortable one. Yet that supposed and subjective dilemma is not a legally valid excuse for following orders from Pioneer, which, under the terms of the contract, the Seegers did not have to follow. If Pioneer did actually dictate to the Seegers that they had to use the Accent even though they did not want to, the Seegers could have refused, pointing to the pesticide provision as giving them ultimate authority over what pesticides were used. According to the Seegers, they did not refuse because they did not believe they could. Under the sometimes unforgiving principles of contract law, such a mistaken belief would not help the Seegers.

Pioneer argues in the alternative that even if the contract authorized it to order the Seegers to apply the Accent, the Seegers themselves caused the damage because they did not apply it properly. Because of the ruling so far, the Court need not tackle this issue—which appears fact-bound and not ripe for summary judgment in any event.

Pioneer has filed a counterclaim against the Seegers, arguing that they owe Pioneer for damaging the crop. Although Pioneer tersely asks for summary judgment on this claim in its reply brief, it has not fully and formally moved for summary judgment. Accordingly, the Court will not consider whether Pioneer is entitled to summary judgment on its counterclaim.

*CONCLUSION*

For the foregoing reasons, Pioneer Hi-Bred International, Inc.'s Motion for Summary Judgment is **GRANTED;** however, the Defendant's counterclaim remains pending.