UNITED STATES of America, Plaintiff–Appellee,

v.

Guy E. McGAUGHEY, Jr., Defendant–Appellant.

No. 91–2864.

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1992.

Decided Oct. 13, 1992.

Rehearing and Rehearing En Banc Denied Jan. 25, 1993.

Robert L. Simpkins, Asst. U.S. Atty., Crim. Div., Fairview Heights, Ill., Gary R. Allen, Murray S. Horwitz (argued), Jonathan S. Cohen, Peter Sklarew, Charles M. Greene, Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., for plaintiff-appellee.

Richard A. Green, Feirich, Schoen, Mager & Green, Carbondale, Ill., William J. Harte (argued), Chicago, Ill., for defendant-appellant.

Before CUDAHY and MANION, Circuit Judges, and GIBSON, Senior Circuit Judge.[1]

FLOYD R. GIBSON, Senior Circuit Judge.

Guy McGaughey, Jr. appeals the district court's grant of summary judgment in favor of the government in its suit on a tax-related debt. We affirm.

## I. BACKGROUND

On December 25, 1972, the Secretary of the Treasury assessed McGaughey approximately $600,000 for tax deficiencies. This assessment was based on a Tax Court decision rendered on August 21, 1972.[2] At some time not specified in the record, Internal Revenue Agent Madge Garwood was assigned the task of collecting this deficiency.

McGaughey submitted an offer of compromise based on "doubt of liability." This offer was submitted, as required by IRS regulations, on Form 656. Form 656 contains, *inter alia*, a clause indicating the taxpayer agrees to suspend the statute of limitations for collecting tax deficiencies during the time in which the offer is being considered, and, if the offer is ultimately rejected, for one year after the rejection. This offer was ultimately rejected because Treasury Regulations forbid the acceptance of an offer of compromise based on doubt of liability when the issue of liability has previously been determined by the Tax Court. McGaughey then filed a series of offers of compromise based on "doubt as to collectibility;" the last offer was submitted in October 1982. All of these offers were

---

1. The Honorable Floyd R. Gibson, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

2. Neither the merits of the Tax Court's decision nor the merits of the deficiency are the subject of this appeal.

submitted on Forms 656, and all of these offers were rejected.

In December 1987, the government filed a complaint in district court seeking a judgment in the amount of the deficiency plus interest.[3] Both parties filed motions for summary judgment. The Form 656 used to submit McGaughey's initial offer of compromise was not offered to support either party's motion because it no longer existed; in accordance with IRS procedures, all Forms 656 are destroyed eight years after they are rejected. In support of his motion, McGaughey submitted an affidavit contending Garwood induced him to make an offer of compromise based on doubt as to liability by telling him that she did not think he owed the money and that an offer of $10,000 was likely to be accepted. He also averred that he did not recall filling out a Form 656.

In support of its motion, the government presented secondary evidence to prove the prior existence of the Form 656 and the execution of the waiver of the statute of limitations. If the Form 656, including the waiver, was filled out properly, it was then sent to a Service Center; if it was not, the form was returned to the taxpayer without being considered and without further processing. McGaughey's offer of compromise, which was filed with the Louisville District Director, would have been sent to the Memphis Service Center. There, information would be entered into a computer and a Form 2515 prepared. Form 2515 is a control card that contains the name of the taxpayer, the time periods involved, the type of tax, the amount and terms of the offer, and other data pertaining to the offer of compromise. After the Form 2515 was prepared, a transcript of the taxpayer's account, including tax returns, was ordered, and the entire file would be returned to the District Director. Upon its return to Louisville, the Form 656 would be examined for completeness and accuracy. If the Form was complete and accurate, it would be forwarded for further consideration. Once a decision was made to either accept or reject the offer, the file would be

sent back to the Memphis Service Center, where computer entries reflecting that decision would be made.

In addition to affidavits describing this process, the government presented copies of the Form 2515 for McGaughey's offer of compromise, which indicate that the statute of limitations was waived and that the waiver had been accepted. The government also introduced copies of memos indicating the file was transferred between Louisville and Memphis. Based on the documents presented to it, the district court concluded McGaughey had filled out a Form 656, that the waiver of the statute of limitations had been executed by both McGaughey and a representative of the IRS, and that the series of offers McGaughey subsequently filed had extended the statute of limitations to the point that the instant suit was not time-barred. Thus, the district court granted the government's motion for summary judgment and denied McGaughey's.

Approximately fifteen days after judgment was entered, McGaughey's stepson found a copy of what appears to be the Form 656 McGaughey used to submit his offer of compromise based on doubt as to liability. The document was signed by both McGaughey and Garwood, but the clauses purporting to suspend the statute of limitations had been crossed out. McGaughey presented this newly found document as an additional ground in his already-pending motion to amend or alter the judgment.

The government responded by filing an affidavit in which Garwood acknowledged her signature on the document McGaughey's stepson had found, but contended that she would never have signed a Form 656 containing a waiver clause that had been crossed out. She further stated that if she had signed such a Form 656, it would have been returned to her immediately as it would have contained an improperly executed waiver clause. The district court declined to consider the new evidence, stating that McGaughey had not demonstrated due

---

3. The total amount sought was in excess of $2.3 million.

diligence in locating the document. McGaughey appeals.

## II. DISCUSSION

▆ The key to this case depends upon the existence and validity of the waiver contained in the first offer of compromise. If the first offer contained a valid waiver, the statute of limitations was further extended by the subsequent offers and the government's lawsuit is not timebarred. If, on the other hand, the waiver in the initial offer was nonexistent or invalid, there would be nothing for the subsequent waivers to extend. The burden of proving the existence and validity of the waiver lies with the government. *United States v. Borchardt*, 470 F.2d 257, 261 (7th Cir. 1972). We review the court's grant of summary judgment *de novo*, and affirm if, after granting the non-moving party all reasonable inferences from the supporting documents, there is no genuine issue of material fact. *Continental Corp. v. Aetna Casualty & Sur. Co.*, 892 F.2d 540, 543 (7th Cir.1989). With these principles in mind, we examine McGaughey's challenges to the district court's grant of summary judgment.

### A. *The Missing Original Form 656*

The contents of McGaughey's initial offer are the focus of this dispute, and the optimal proof of the contents is the original document. Fed.R.Evid. 1002. However, "[t]he original is not required, and other evidence of the contents of a writing ... is admissible if [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith...." Fed. R.Evid. 1004.

▆ Of course, before secondary evidence may be used, it must be demonstrated that the original has actually been destroyed. Unless someone testifies that he or she personally destroyed or witnessed the destruction of a document, such proof will ordinarily be circumstantial. In this case, the district court received affidavits describing the IRS' procedures requiring the destruction of Forms 656 after a specified period of time. The court also re-

ceived an affidavit from Garwood, who indicated that her search for the document was futile and that she had been informed the document was destroyed. Based on this information, the district court found that the original had been destroyed.

▆ McGaughey contends there was inadequate proof that a thorough search for the original was conducted. Rule 1004 does not contain an independent requirement that a search be conducted; rather, the concept of a diligent search is an avenue by which the larger issue of the document's destruction may be proved. *See Harrington v. United States*, 504 F.2d 1306, 1313–14 (1st Cir.1974) (pre-rule case affirming district court's conclusions that inadequacies in search rendered proof of document's unavailability insufficient); 5 Weinstein's Evidence ¶ 1004(1)[05] at 1004–18 (1983) ("By far the most common means of prov[ing] loss or destruction is the use of circumstantial evidence showing a diligent but unsuccessful search and inquiry for the document.") (quotation omitted); *McCormick on Evidence*, § 237 at 715 (3d ed. 1984) ("Loss or destruction may sometimes be provable by direct evidence but more often the only available evidence will be circumstantial, usually taking the form that appropriate search for the document has been made without discovering it."). These uncontradicted affidavits and documents amply demonstrated the original Form 656 was destroyed.

▆ The secondary evidence offered by the government to prove that McGaughey and Garwood executed the waiver contained in the Form 656 included a detailed description of the procedures involved in processing an offer of compromise and the control cards and memoranda associated with this offer. These materials identified the steps of the process McGaughey's offer underwent, and further indicated that the offer could not have reached those steps in the process if his offer was not on a Form 656 and if the waiver on the form was not validly executed. McGaughey argues the government's showing was insufficient because nobody specifically recalled the presence of the waiver on

*his* offer of compromise. However, the Rules of Evidence do not establish a hierarchy of secondary evidence; anything that tends to demonstrate the writing's contents may constitute secondary evidence. McGaughey's argument goes to the weight, not the admissibility, of this secondary evidence. Based on the affidavits presented by the government, and McGaughey's failure to present any substantial evidence to contradict the government's showing, the court's conclusion that McGaughey's initial offer of compromise included a waiver of the statute of limitations was not improper. *Cf. United States v. Conry,* 631 F.2d 599, 600 (9th Cir.1980) (per curiam).

### B. *Appropriateness of Summary Judgment*

McGaughey contends summary judgment in favor of the government was unwarranted because the waiver was ineffective as a matter of law. He further contends that even if the waiver was effective, material questions of fact remained unresolved, rendering summary judgment improper. We reject each of these contentions.

### 1. Validity of the Waiver

A court proceeding to collect a tax must begin

(1) within 6 years after the assessment of the tax, or

(2) prior to the expiration of any period for collection agreed upon in writing by the Secretary and the taxpayer before the expiration of such 6–year period. . . .

26 U.S.C. § 6502(a) (1988). Treasury regulations mirror the statute's statement that the limitation period may be extended by a written agreement. 26 C.F.R. § 301.6502–1(2). However, Treasury Regulations also prohibit any compromise of a tax liability "if the liability has been established by a valid judgment or is certain, and there is no doubt as to the ability of the Government to collect the amounts owing with respect to such liability." *Id.* § 301.7122–1(a).

■ McGaughey argues the word "agreement" as used in both the statute and the regulation means "enforceable agreement;" to this conclusion he adds the observation that the agreement must be signed by both the taxpayer and the Commissioner. From these premises, McGaughey argues contract principles govern the enforceability of the waiver. He contends he agreed to extend the statute of limitations based on the IRS' agreement to consider his offer of compromise; however, because the IRS could not accept his offer due to the operation of § 301.7122–1(a), its promise to consider his offer was illusory and his agreement to extend the statute of limitations is unenforceable. McGaughey's argument is defeated in his initial premise: contract principles do not govern this case.

In *Florsheim Bros. Drygoods Co. v. United States,* 280 U.S. 453, 50 S.Ct. 215, 74 L.Ed. 542 (1930), the Supreme Court held that waivers of the statute of limitations on collecting tax deficiencies are not contracts. *Id.* at 466, 50 S.Ct. at 219; *see also Stange v. United States,* 282 U.S. 270, 276, 51 S.Ct. 145, 147, 75 L.Ed. 335 (1931) ("[A] waiver is not a contract, . . . [but] is essentially a voluntary, unilateral waiver of a defense by the taxpayer."). The *Florsheim Bros.* Court was faced with arguments very similar to those advanced by McGaughey, and addressed them as follows:

Stress is laid on the use of the words "agree" and "agreement" in the Acts and Regulations. But these are ordinary words having no technical significance. It is also urged that, unless a contract was intended, there is no reason why the consent of the Commissioner should have been required. But an otherwise plain meaning should not be distorted merely for the sake of finding a purpose for this administrative requirement.

280 U.S. at 466, 50 S.Ct. at 219.

Though courts have, in limited contexts, utilized contractual analysis to solve problems related to waivers, no court has held that a waiver is a contract. McGaughey attempts to support his position by referencing *Rohde v. United States,* 415 F.2d

695 (9th Cir.1969), a case in which the Ninth Circuit had to decide whether the word "agreement" required "that the Commissioner affirmatively assent to the waiver before it became effective[.]" *Id.* at 697. The court recognized a waiver is not a contract, *id.*, and concluded that "[t]rue 'agreement' does not mean 'contract' in this setting. It means expressed assent." *Id.* at 698. *Rohde*'s holding does not help McGaughey.

McGaughey also gleans support from our decision in *United States v. Harris Trust & Sav. Bank,* 390 F.2d 285 (7th Cir.1968). There, we stated that "the suspension of the statute of limitations is the *quid pro quo* for the Government's considering a compromise offer." *Id.* at 288. In making this statement, we adopted the following explanation offered by the Eighth Circuit:

> "The taxpayer, in submitting such an offer and waiver, in effect requests the Government to withhold attempts to collect the tax while the offer is pending, and, in consideration of this forbearance on the part of the Government, consents to forego the benefit of having the statute of limitations run while his offer of settlement is pending."

*Id.* (quoting *United States v. Havner,* 101 F.2d 161, 163 (8th Cir.1939)).

■ *Harris Trust* does not state that contract principles govern the validity of a waiver and, of course, it could not do so without directly contradicting the Supreme Court's decisions in *Florsheim Bros.* and *Stange.* We therefore resist any construction of *Harris Trust* that would place it in conflict with Supreme Court cases addressing this issue. With this in mind, we believe the portions of *Harris Trust* upon which McGaughey relies should not be read in strict contractual terms. There was, in a non-technical sense, a *quid pro quo:* McGaughey agreed to suspend the statute of limitations, and the IRS agreed to consider his offer. Even if the IRS' ability to accept the offer was proscribed by law, and even if this waiver would be invalid if contract principles were applied, the waiver is valid because contract principles do not apply and because the IRS *did* consider the offer, even though its rejection was preordained.

**2. Unresolved Questions of Material Fact**

■ McGaughey contends unresolved questions of material fact precluded entry of summary judgment in favor of the government. The substance of the unresolved factual matters concern representations Garwood made to him about the advisability of filing an offer of compromise based on doubt as to liability and about the likelihood that his offer would be accepted.

Though we agree that there is a factual dispute over these matters, we do not believe these facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). McGaughey posits two legal arguments based upon these facts, but neither argument affects the outcome of this case.

McGaughey first contends the facts may demonstrate the existence of a misrepresentation sufficient to defeat the waiver. This argument relies heavily upon contractual principles, which we have indicated have no place in determining the validity of the waiver. By signing the waiver, McGaughey unilaterally surrendered any defense he might have under the statute of limitations. Even if McGaughey was induced to sign the waiver by false promises of certain compromise, he does not allege there were any misrepresentations about the substance of the waiver.

■ McGaughey's second argument is that Garwood's actions estop the government from asserting the waiver, thereby permitting McGaughey to assert the statute of limitations as a defense. Even if McGaughey's factual allegations about Garwood's conduct are true, they do not permit estopping the government in this case. As a general matter, the party asserting estoppel against the government

must not only satisfy the traditional elements of estoppel, but must also carry a heavy burden to outweigh the strong, countervailing interest in obedience to the law. *Heckler v. Community Health Serv.,* 467 U.S. 51, 60–61, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). The proponent of estoppel must first demonstrate that the government's actions constitute "affirmative misconduct." *United States v. Lair,* 854 F.2d 233, 237–38 (7th Cir.1988). Once this hurdle has been met, the proponent must satisfy the following four requirements:

> "First, the party to be estopped must know the facts. Second, this party must intend that his [or her] conduct shall be acted upon, or must so act that the party asserting estoppel has a right to believe it is so intended. Third, the party asserting estoppel must have been ignorant of the facts. Finally, the party asserting estoppel must reasonably rely on the other's conduct to his [or her] substantial injury."

*Id.* at 238 (quoting *Portmann v. United States,* 674 F.2d 1155, 1167 (7th Cir.1982)). Assuming, without deciding, that the facts as alleged by McGaughey satisfy the initial hurdle and the first two additional elements, we hold that the facts viewed in the light most favorable to McGaughey fail to satisfy his burden on the latter two additional elements.

Our first concern focuses upon both McGaughey's ignorance of the facts (element three) and his reasonable reliance upon Garwood's conduct (element four). Initially, we note that Garwood did not misrepresent facts; she misrepresented the IRS' authority to accept McGaughey's offer. Consequently, there was no "fact" of which McGaughey was unaware. Furthermore, "[j]ust as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents." *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *see also Community Health Serv.,* 467 U.S. at 65–66, 104 S.Ct. at 2226–2227. Inasmuch as McGaughey is charged with knowledge of the regulations (concededly, a legal fiction with which the individual is stuck), his reliance upon Garwood's representations cannot be considered reasonable.

Our second concern focuses on the lack of "substantial injury" suffered by McGaughey (element four). Initially, it is difficult to ascertain an injury; our difficulty is augmented by McGaughey's failure to identify the harm he suffered. At best, he can claim to have been injured by having to pay more interest on the deficiency. However, interest payments are not punishment; they are designed to compensate the party entitled to the money for the time he has waited to receive the money. Furthermore, we note that McGaughey has contributed significantly to the increased interest; *the offer of compromise at issue in this case was filed in June 1977 and was rejected in March 1978.* Thereafter, McGaughey made a series of additional offers of compromise, the last of which was rejected in October 1982. This latter period of time is much longer than the delay caused by the initial offer of compromise, and was not induced by Garwood. Consequently, Garwood's actions did not cause McGaughey sufficient harm to justify estopping the government.

To summarize, we conclude that even if McGaughey's allegations about Garwood's conduct are true, they do not present factual matters that would affect the legal issues in this case. Misrepresentation, being a contractual theory, has no application in analyzing the validity of the waiver. Moreover, McGaughey's allegations do not justify estopping the government from asserting the waiver. Consequently, the fact that these matters were not undisputed did not render summary judgment inappropriate.

### C. *Denial of the Motion to Reconsider*

McGaughey contends the district court erred in denying his motion for relief under Fed.R.Civ.P. 60(b)(2), which permits the court to relieve a party from a final judgment upon the discovery of "newly discovered evidence which by due diligence could not have been discovered in time to move

for a new trial under Rule 59(b)...." He contends the court erred in concluding he did not exercise due diligence in failing to locate the copy of his Form 656 and, even if the court was correct, the motion should have been granted because of the dispositive nature of the document.

### 1. Due Diligence

We have set forth a series of eight prerequisites to the granting of a Rule 60(b)(2) motion:

1) the evidence was in existence at the time of trial or pertains to facts in existence at the time of trial;

2) it was discovered following trial;

3) due diligence on the part of the movant to discover the new evidence is shown or may be inferred;

4) the evidence is admissible;

5) it is credible;

6) the new evidence is material;

7) it is not merely cumulative or impeaching; and, finally,

8) the new evidence is likely to change the outcome.

*Mumford v. Bowen,* 814 F.2d 328, 330 (7th Cir.1986). The district court identified only one factor wanting—the due diligence requirement.[4] The court said that McGaughey

> at various times has denied ever having received the "offer in compromise." It, therefore, is difficult to characterize defendant's actions throughout this entire ... four and one-half year process as anything approaching "due diligence." This piece of evidence was within the reach and control of the defendant and allegedly located within his own files. There is no satisfactory explanation offered for this delay, or of defendant's failure to properly review all material within his control, or if he never received it, how it found its way into his files.

*United States v. McGaughey,* No. 90–3475–WDS, slip op. at 3–4 (S.D.Ill. July 10, 1991) (memorandum and order denying motion to set aside judgment).

"The decision of a district court declining to reopen a judgment under Rule 60(b) may be reviewed only for abuse of discretion, ... and we have held that to find an abuse of discretion the court of appeals must conclude that no reasonable man could agree with the district court." *Metlyn Realty Corp. v. Esmark, Inc.,* 763 F.2d 826, 831 (7th Cir.1985) (quotations omitted). We believe the issue of McGaughey's diligence is a close one, but the deferential standard of review governing this issue convinces us the district court should be affirmed. McGaughey contends his search was diligent, that the document was not located because it was filed among papers dealing with an unrelated matter, and he only claimed to have not received a copy of the Form 656 because of his inability to locate one. Despite these contentions, the district court's reasoning is not wholly without weight; given the importance of the document, one would have expected McGaughey to search all of his papers. The fact that the document was in McGaughey's possession throughout the pendency of the proceedings below further belies McGaughey's claim of diligence.

### 2. "Dynamite" Evidence

McGaughey argues that even if we affirm the district court's conclusion that he failed to exercise due diligence, we should reverse the district court because the tardily-discovered document is conclusive on the issue of the waiver's existence. To support his position, McGaughey relies on *Ferrell v. Trailmobile, Inc.,* 223 F.2d 697 (5th Cir.1955). *Ferrell* involved a foreclosure on a truck trailer; the dispute at trial centered on whether or not certain payments had been made. After judgment was entered in favor of the plaintiff, the defendant found copies of the money orders used to make the disputed payments. The Fifth Circuit reversed the district court's denial of the defendant's Rule 60(b) motion, holding that if "practically conclusive evidence shows that the appellant had actually paid all eighteen installments for the purchase of the trailer, it is obvious

---

**4.** In doing so, the court did not mention the other requirements.

that the judgment should be set aside to prevent a manifest miscarriage of justice. In such a case, the ends of justice may require granting a new trial even though proper diligence was not used to secure such evidence for use at the trial." *Id.* at 698.

The *Ferrell* rule does not appear to have been formally adopted in this circuit. *But see Gomez v. Chody,* 867 F.2d 395, 407 (7th Cir.1989) (Cudahy, J., dissenting in part). *United States v. Walus,* 616 F.2d 283 (7th Cir.1980) contains language favorable to *Ferrell*'s, but does not adopt the rule. *See id.* at 304 (stating in dicta that even if the failure to secure evidence in time for trial "could be characterized as neglect, ... we nevertheless cannot hold that the results of this trial are forever insulated from re-examination. In light of the strength of the new evidence, affirmance of the district court's decision would be to accept an evil far greater than waste of the court's or litigant's time.") (quotation omitted).[5] We decline to formally adopt the *Ferrell* rule as the law of this circuit because even if it were the law, we would not reverse the district court in this case.

The *Ferrell* rule should be applied when the new evidence "is virtually determinative of the merits of the litigation." *Gomez,* 867 F.2d at 407 (Cudahy, J., dissenting in part). We are not persuaded that the document proffered by McGaughey represents the "dynamite" necessary to meet this standard. First, McGaughey has never alleged signing a Form 656 with a waiver that had been crossed out; in fact, he has, through much of this litigation, denied ever signing a Form 656 in connection with his initial offer. Second, the lines that have been scratched out have not been initialed by the parties, as one might expect when an important document is altered in such an integral manner. Third, the only reason for Garwood to sign the Form 656 was to accept the taxpayer's waiver of the statute of limitations on behalf of the IRS; if the waiver had been crossed out, there

would have been no need to sign the waiver (yet she did).

McGaughey correctly contends that if this document had been presented to the district court in a timely manner, summary judgment would have been inappropriate. Nonetheless, this is not the issue; the issue is whether the document causes us to believe, with virtual certainty, that judgment in favor of the government—regardless of whether it was obtained summarily or after trial—is incorrect. The concerns we have identified prevent us from believing, with the required degree of certainty, that the underlying judgment is incorrect. Consequently, we affirm the district court.

## III. CONCLUSION

We conclude the district court did not err in deciding that the original Form 656 had been destroyed, in considering secondary evidence of the form's contents, and in concluding that McGaughey did waive the statute of limitations. Contract principles do not govern the validity of waivers, so the waiver was effective even if the IRS was foreclosed from accepting the offer. Furthermore, disputed questions of fact about possible misrepresentations did not prevent the entry of summary judgment because these factual matters were not relevant under the laws applicable to this case. Finally, the district court did not err in denying McGaughey's motion to set aside the judgment based on newly discovered evidence. Finding no error in the district court's treatment of this case, we affirm.

AFFIRMED.

---

5. We characterize this passage from *Walus* as dicta because the district court's justification for denying the Rule 60(b) motion was not lack of diligence, but "that the evidence against the de-fendant at trial was compelling and ... the new evidence was not of the quality that justifie[d] vacating the judgment." *Walus,* 616 F.2d at 288.