**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 19 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JAMES H. CROSS and
ADAH I. CROSS,

        Plaintiffs - Appellants,

    v.

UNITED STATES OF AMERICA,

        Defendant - Appellee.

No. 96-3243

(District of Kansas)

(D.C. No. 95-1116-MLB)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY, LUCERO**, Circuit Judges, and **MILES-LAGRANGE**, District Judge.[**]

---

The plaintiffs James H. Cross and Adah I. Cross appeal the district court's order

denying their motion for permanent injunctive relief and dismissing their complaint

against the defendant the United States. In the district court proceedings, the Crosses

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Vicki Miles-LaGrange, United States District Judge for the Western District of Oklahoma, sitting by designation.

sought an injunction prohibiting the United States from attempting to enforce federal income tax assessments, federal tax liens, and tax levies for the years 1974-76 and 1979-80. The Crosses contended that, for these tax years, the Internal Revenue Service (IRS) failed to issue the required statutory notices of deficiencies and failed to establish that they had waived the notice of deficiency requirement by signing an IRS Form 870-AD. The district court rejected the Crosses' argument, reasoning that even though the IRS was unable to produce the Form 870-AD, it had presented circumstantial evidence sufficient to establish that the Crosses had executed the form.

We exercise jurisdiction under 28 U.S.C. § 1291. For the reasons set forth below, we affirm the district court's decision.

## I. BACKGROUND

In 1986, the IRS examined the Crosses' tax returns for 1974-76 and 1979-80 and determined that they owed additional income taxes. After the examination, the Crosses and the IRS reached an agreement as to the amount of the additional assessments that the Crosses would pay. On May 2, 1986, IRS Appeals Officer R. Keith Ward sent a letter to Tom Dechant, the Crosses' accountant, regarding the agreement to pay the additional taxes. Mr. Ward attached a Form 870-AD to his letter. He requested Mr. Dechant to obtain the required signatures and return the form within ten days.

A Form 870-AD is an IRS document that is used when the IRS and the taxpayer

2

have reached an agreement as to the additional amount owed by the taxpayer or the amount of overassessment by the IRS.[1]  The form states that the taxpayer waives his or her statutory right (under 26 U.S.C. § 6213(a)) to have the IRS issue a notice of deficiency before collecting additional taxes.  It further states that the taxpayer consents to the IRS's assessment and collection of deficiencies and to the IRS's calculation  of overassessments.  The form contains blank spaces in which the particular amounts of agreed deficiencies or overassessments may be inserted.  See Aplts' App. at 66.  It must be signed by both the taxpayers and a representative of the IRS.

On May 8, 1986, Mr. Dechant sent a letter and the Form 870-AD to Mr. Cross. Mr. Dechant explained that the Form 870-AD "sets out the tax and penalties you owe, pursuant to our settlement with Keith Ward." Id. at 65.  Mr. Dechant added that he had "reviewed the IRS calculations and found them correct." Id.  He told Mr. Cross that both he and Mrs. Cross should sign the Form 870-AD and return it to Mr. Ward.

In subsequent years, the Crosses made several additional payments to the IRS for the tax years in question.  The IRS also levied on the Crosses' property to collect some of the taxes.

In November 1994, an attorney representing the Crosses requested that the IRS produce a copy of the statutory notices of deficiency for the tax years 1974-76 and 1979-

---

[1]     The IRS refers to the form as an "Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment." See Aplt's App. at 66.

80 as well as any waivers of the statutory notice requirement. After the IRS responded that it was unable to locate any such waivers, the Crosses filed this lawsuit. They alleged that in light of the IRS's failure to produce the requested waivers, "[t]he subject assessments . . . have no basis in law or fact." Aplts' App. at 13 ¶ 5 (First Amended Complaint, filed April 26, 1995). They requested the district court to enter an order declaring the IRS's assessments for 1974-76 and 1979-80 to be of no force and effect and to enter preliminary and permanent injunctions prohibiting the United States or any of its agencies or employees from collecting the challenged assessments and requiring the IRS to return all property previously seized.

On July 20, 1995, the district court entered an order granting the Crosses request for a preliminary injunction. The court enjoined the IRS from issuing notices of levy or from seizing or otherwise interfering with the Crosses' property until the case was finally adjudicated. It directed the IRS to produce evidence or otherwise show cause within thirty days why the court should not grant the Crosses permanent injunctive relief. The court reasoned that it was the IRS's burden to demonstrate that the Crosses had waived the notice of deficiency requirements for the subject tax years. "The IRS will have to produce more compelling evidence and more persuasive legal arguments if it hopes to carry that burden," the court said. Aplts' App. at 6 (District Court Order, filed July 20, 1995).

The IRS filed a response to the district court's order and presented the affidavits of

4

several officials regarding its routine practices in entering into agreements with taxpayers. See Aplts' App. at 57-60 (affidavits of Brenda L. Fisher and William C. Reitan). These affidavits explained that, in 1986, agency procedures required five levels of review before a case could be closed and a tax assessment made. See id. at 59-60. According to the IRS, none of these five steps would be completed unless a Form 870-AD had been signed by the taxpayers. "The standard procedures made it virtually impossible to permit an assessment without the taxpayers' signature on [F]orm 870-AD." Id. at 60.

After considering the IRS's evidence and the Crosses' response, the district court entered an order dissolving the preliminary injunction, denying the Crosses' request for a permanent injunction, and dismissing their complaint. The court concluded that "[a]lthough the IRS has been unable to produce a signed copy of the Form 870[-]AD, it has met its burden of proof through the use of circumstantial evidence." Aplts' App. at 97 (District Court Order, filed Nov. 30, 1995). The court cited the affidavits of the IRS officials regarding the five levels of review and said that it was unreasonable to conclude that an unsigned Form 870-AD would have gone unnoticed.

The Crosses then filed a motion to alter or amend the district court's judgment. Upon reviewing that motion, the court allowed the Crosses to depose William C. Reitan, the Chief of the IRS Appeals Office in Oklahoma City in 1986. After reviewing a transcript of Mr. Reitan's deposition, the court denied the Crosses' motion to alter or amend the judgment. It reasoned that his testimony did not rebut the circumstantial

evidence establishing that the Crosses signed the Form 870-AD and that the challenged assessments were therefore proper.

## II. DISCUSSION

On appeal, the Crosses argue that the district court erred in concluding that the evidence in the record was sufficient to establish that they executed the Form 870-AD. They also argue that the record does not establish that an IRS official executed the form. According to the Crosses, because a reasonable fact finder could draw conflicting inferences as to whether the form was executed, the case should be remanded to the district court for trial.

Because the district court reviewed the documentary evidence submitted by the IRS but did not conduct an evidentiary hearing or a trial, we treat its ruling as a grant of summary judgment to the IRS. See M.S. News Co. v. Casado, 721 F.2d 1281, 1285 n.3 (10th Cir. 1983) (reviewing district court's dismissal of a claim for injunctive relief that relied on affidavits as an order granting summary judgment to the defendant). We review the grant of summary judgment de novo, applying the same standard as the district court. J. B. v. Washington County, 127 F.3d 919, 923 (10th Cir. 1997). Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "We view the evidence and draw any inferences therefrom in the light most favorable to the party opposing summary judgment." Coosewoon v. Meridian Oil Co., 25 F.3d 920, 929 (10th Cir. 1994). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,' summary judgment in favor of the moving party is proper." Thomas v. I.B.M., 48 F.3d 478, 484 (10th Cir. 1995) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "When the moving party has carried its burden [of demonstrating the absence of a genuine issue of material fact] under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

## A. Notice of Deficiency and Waiver

When the IRS determines that a taxpayer owes additional taxes, it is authorized to send a notice of deficiency to the taxpayer. See 26 U.S.C. § 6212(a); Guthrie v. Sawyer, 970 F.2d 733, 735 (10th Cir. 1992). The notice of deficiency is a "pivotal feature of the [Internal Revenue] Code's assessment procedures." Holof v. Commissioner, 872 F.2d 50, 53 (3d Cir. 1989). It "serves as a prerequisite to a valid assessment by the IRS." Robinson v. United States, 920 F. 2d 1157, 1158 (3d Cir. 1990); see also United States v. Zolla, 724 F.2d 808, 810 (9th Cir. 1984) ("The IRS must send a notice of deficiency

7

before it may assess, collect, or reduce to judgment most income tax liabilities.").

Within ninety days of receiving the notice, a taxpayer may file a petition in the United States Tax Court challenging the deficiency determination. See 26 U.S.C. § 6213(a); Guthrie, 970 F.2d at 735. "The notice of deficiency is thus the 'ticket' to the Tax Court that allows the taxpayer to challenge the tax assessment before paying it." Guthrie, 970 F.2d at 735.

Nevertheless, the taxpayer may waive the notice of deficiency requirement. See 26 U.S.C. § 6213(d) ("The taxpayer shall at any time (whether or not a notice of deficiency has been issued) have the right, by a signed notice in writing filed with the Secretary, to waive the restrictions provided in subsection (a) on the assessment and collection of the whole or any part of the deficiency."). The document at issue in this case, the Form 870-AD, is used by the IRS to record the taxpayer's waiver.

Importantly, the Internal Revenue Code provides taxpayers with a means of enforcing the notice of deficiency requirement. Section 6213(a) authorizes the proper court to issue an injunction prohibiting an assessment or levy if the taxpayer has not received a notice. Guthrie, 970 F.2d at 735. Section 6213(a) thus establishes an exception to the Anti-Injunction Act, 26 U.S.C. § 7421, which generally prohibits claims seeking to restrain the assessment or collection of taxes. See id.

In the instant case, the parties agree that the IRS has not issued notices of deficiency to the Crosses' for the disputed tax years. As a result, the validity of the

Cross's claim to enjoin IRS's assessment and collection efforts turns on the existence of a valid waiver of the notice of deficiency requirement. If the Crosses waived this requirement by executing the Form 870-AD, then they are not entitled to the requested injunction, and the IRS may proceed with its assessment and collection efforts.

### B. Admission of Circumstantial Evidence Under Fed. R. Evid. 1004

As the district court and the parties have noted, the evidence regarding the execution of the Form 870-AD was entirely circumstantial. However, under Rule 1004 of the Federal Rules of Evidence, "[t]he original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if--(1) . . . all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." Fed. R. Evid. 1004(1); see Cartier v. Jackson, 59 F.3d 1046, 1048-49 (10th Cir. 1995) (applying Fed. R. Evid. 1004(1)). Rule 1004(1) thus requires the court to undertake two related inquiries before admitting secondary evidence regarding a document: (1) whether the document in question was actually lost or destroyed, see United States v. McGaughey, 977 F.2d 1067, 1071 (7th Cir. 1992), and (2) whether the party offering the document has acted in bad faith, see Seiler v. Lucasfilm, Ltd., 613 F. Supp. 1253, 1260-62 (N.D. Cal. 1984), aff'd, 808 F.2d 1316 (9th Cir. 1986).

As to the first inquiry, we note that "'[b]y far the most common means of prov[ing] loss or destruction is the use of circumstantial evidence showing a diligent but

9

unsuccessful search and inquiry for the document.'" McGaughey, 977 F.2d at 1071 (quoting 5 Weinstein's Evidence ¶ 1004(1)[05] at 1004-18 (1983)).  If the proponent demonstrates that such a diligent search has been conducted, courts have admitted the secondary evidence even though the proponent is unable to explain with absolute certainty what happened to the original document.  See, e.g., United States v. Cambindo Valencia, 609 F.2d 603, 633 (2d Cir. 1979) (allowing secondary evidence after proponent testified that original was either returned to the defendant or lost); United States v. Standing Soldier, 538 F.2d 196, 203 (8th Cir. 1976) (admitting secondary evidence after a witness "testified that he had attempted to locate the original note by contacting the criminal investigator and the FBI, but had been unable to find it, although he thought that it probably did still exist").

As to the second inquiry, courts have concluded that the mere possibility that someone has tampered with the proffered secondary evidence is insufficient to establish the proponent's bad faith.  See United States v. Balzano, 687 F.2d 6, 8 (1st Cir. 1982).  Similarly, the negligent destruction of documents has been held to be insufficient to establish bad faith.  See Estate of Gryder v. Commissioner, 705 F.2d 336, 338 (8th Cir. 1983).  In contrast, the purposeful destruction or withholding of original documents and the fabrication of secondary evidence will support a finding of bad faith under Fed. R. Evid 1004(1).  See Seiler, 613 F. Supp. at 1255-63.

In the instant case, both inquiries under Rule 1004(1) support the admissibility of

10

secondary evidence. As to the loss or destruction of the original, the IRS has presented evidence that its officials have undertaken a diligent search for the Form 870-AD and have been unable to find it. See Aplts' App. at 62 ¶ 11 (affidavit of Martin M. Shoemaker). This evidence has not been rebutted by the Crosses. As to the question of bad faith in the loss or destruction of the original, we note that the Crosses have not argued that the IRS acted in bad faith and that the record contains no evidence to support such a finding. Cf. Seiler, 613 F. Supp. at 1255-63 (describing evidence of bad faith and concluding that secondary evidence should not be admitted).

### C. The Weight of Circumstantial Evidence Presented by the IRS

We must now consider whether the district court afforded the IRS's secondary evidence the proper weight in reaching its decision. On this issue, the Crosses contend that the district court erred. They argue that, although the secondary evidence may have supported a reasonable inference that the form was executed, the record also supports the contrary inference: that the form was not executed by either the Crosses or a representative of the IRS. Thus, they contend, the district court should have conducted a trial.

We agree with the Crosses that the burden of proving the existence and validity of a signed Form 870-AD is on the IRS. See McGaughey, 977 F.2d at 1071; United States v. Conry, 631 F.2d 599, 600 (9th Cir. 1980). However, as explained below, in light of

11

decisions granting summary judgment in similar circumstances, the secondary evidence actually produced by the IRS in this case, the Crosses' failure to rebut the IRS's evidence, and the Crosses' own conduct, we agree with the district court that IRS has met its burden and that a trial is not required.

In support of this conclusion, we first note that courts have granted summary judgment regarding the existence and the terms of documents on the basis of secondary evidence.  See e.g, McGaughey, 977 F.2d at 1071-72 (granting summary judgment to the IRS on the basis of secondary evidence that the taxpayers waived the statute of limitations period even though the IRS could not produce the original waiver form); State Mut. Life Assurance Co. v. Lumbermens Mut. Cas. Co., 874 F. Supp. 451, 455-56 (D. Mass. 1995) (granting summary judgment to insured regarding the terms of an insurance policy even though the original policy could not be located because "a cornucopia of circumstantial evidence [] all point[ed] in the same direction"); New York v. Blank, 820 F. Supp. 697, 704-05 (N.D.N.Y. 1993) (concluding that the terms of an insurance policy had been established by circumstantial evidence presented on summary judgment), vacated on other grounds, 27 F.3d 753 (2d Cir. 1994).

For example, in McGaughey, the IRS filed a complaint against a taxpayer in the Tax Court seeking a judgment on a deficiency.  The IRS's claim was based in part on an offer of compromise suspending the statute of limitations.  According to the IRS, the offer of compromise had been recorded on a standard form.  However, in accordance with

12

IRS procedures, the form had been destroyed after eight years. In spite of its inability to produce the original form, the IRS moved for summary judgment on the basis of secondary evidence that the form had been executed. The taxpayer averred that he did not recall signing the form.

The Tax Court granted summary judgment to the IRS, and the Seventh Circuit affirmed. The court relied primarily on the evidence of IRS procedures offered in its summary judgment motion:

> The secondary evidence offered by the government to prove that [the taxpayer] executed the waiver contained in the Form 656 included a detailed description of the procedures involved in processing an offer of compromise and the control cards and memoranda associated with this offer. These materials identified the steps of the process [the taxpayer's] offer underwent, and further indicated that the offer could not have reached those steps in the process if his offer was not on a Form 656 and if the waiver on the form was not validly executed. [The taxpayer] argues the government's showing was insufficient because nobody specifically recalled the presence of the waiver on *his* offer of compromise. However, the Rules of Evidence do not establish a hierarchy of secondary evidence; anything that tends to demonstrate the writing's contents may constitute secondary evidence.

McGaughey, 977 F.2d at 1071-72.

In this case, as in McGaughey, the record contains persuasive evidence that the document at issue was signed by the taxpayers as well as IRS officials. As noted above, a letter to the Crosses from their own accountant indicates that he sent a Form 870-AD to them and told them that it was an accurate statement of their agreement with the IRS.

13

Additionally, the IRS presented evidence from an official who had worked on the Crosses' case. Brenda L. Fisher, who served as an appeals aide in the Oklahoma City office, stated that she prepared closing documents in the Crosses' case and that the documents that she signed (an "Appeals Case Closing Transmittal" and assessment documents) demonstrate that she had verified that the Crosses had signed the Form 870-AD. See Aplts' App. at 57-58. Ms. Fisher explained that the closing documents contained the notation "Form 8070 AD" in her handwriting and that she would not have made that entry unless the Crosses had signed the form. See Aple's Supp. App. at 11-12.

Significantly, Ms. Fisher's testimony also indicates that IRS officials signed the Form 870-AD after the Crosses did. She stated that an IRS Form 5403, an "Appeals Closing Record" listed an "agreement date"of June 22, 1986. See Aplt's App. at 57, 69; Aple's Supp. App. at 15. According to Ms. Fisher, that was "the date that the chief of the office signed the Form 8[]70-AD, accepting it for the [C]ommissioner." See Aple's Supp. App. at 15.

The IRS also submitted an affidavit from William Reitan, the former Chief of the IRS Appeals Office in Oklahoma City, which handled the Crosses' case. See Aplts' App. at 59-60. Mr. Reitan explained that under established IRS practices, the settlement of a case proceeded through five steps, each of which required the responsible official to review settlement documents, including the Form 870-AD: (a) commencement of the case closing process, which began only after the signed form was received from the taxpayers;

14

(b) preparation of closing documents by an appeals aide; (c) review of the form by the Chief of Appeals, who determined that the taxpayers had signed the form before he signed it himself; (d) review by an appeals record clerk, who would take the figures set forth in the form and include them in the assessment document; and (e) review by the Oklahoma District Examination Support Processing (ESP) Section, which determined whether all the necessary documents were present and used the date that the form was accepted to calculate the assessed interest. As to this final calculation, Mr. Reitan explained, "[w]ithout a form 870-AD properly signed by the taxpayers, ESP would not make an assessment. Instead, they would return the file to [the Appeals Division] stating no assessment could be made " Aplts' App. at 60. Based on these established procedures, Mr. Reitan added, he was "confident that [the Crosses] had signed [F]orm 870-AD on or before July 16, 1986. . . . The standard procedures made it virtually impossible to permit an assessment without the taxpayers' signature on [F]orm 870-AD." Id. at 59-60.

In light of these established administrative procedures, a presumption of regularity attaches to the IRS's settlement of the dispute with the Crosses. See Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993); Wilson v. Hodel, 758 F.2d 1369, 1374 (10th Cir. 1985). "[A]ll necessary prerequisites to the validity of official action are presumed to have been complied with, and . . . where the contrary is asserted it must be affirmatively shown." United States v. Ahrens, 530 F. 2d 781, 785 (8th Cir. 1976) (quoting Lewis v. United States, 279 U.S. 63, 73 (1929)).

15

An examination of the Crosses' submissions reveals that they have failed to make such an affirmative showing. As explained below, the limited evidence that they have identified does not support a reasonable inference that they did not execute the Form 870-AD.

The Crosses first point to their own response to the IRS's interrogatories indicating that "[they] can't say whether [they] did or . . . didn't" execute the Form 870-AD. See Aplts' App. at 148. We agree that the Crosses' failure to remember whether they signed the form is entirely understandable: there is no indication that they had any familiarity with the methods used to settle cases with the IRS; the events in question occurred nine years earlier; and the signing of one particular tax form among many is certainly a forgettable experience. However, in light these very circumstances, the Crosses' lack of memory about the form is entitled to little weight in determining whether they actually signed it. See McGaughey, 977 F.2d at 1070, 1072-73 (affirming the grant of summary judgment to the to IRS in spite of the fact that the taxpayer stated that he did not remember signing a waiver form). This would be a closer case if the Crosses had stated under oath that they did not sign the Form 870-AD, but they did not so state. Cf. Godfrey v. United States, 997 F.2d 335, 339-40 (7th Cir. 1993) (relying on taxpayers' affidavit regarding the date that they received a refund check in concluding that the taxpayers' were entitled to summary judgment).

The Crosses also point to two statements in Mr. Reitan's deposition: that he had

16

no personal recollection of the Crosses' case and that IRS officials occasionally make mistakes. See Aplts' App. at 134, 141. These statements are also insufficient to rebut the IRS's evidence. Although it is quite conceivable that some errors occurred in the IRS's handling of the Crosses' case, Ms. Fisher's testimony about the settlement of the Crosses' case, the evidence presented by the IRS concerning the various levels of review, and the statements of the Crosses' own accountant do not allow a rational inference that the IRS officials responsible for the five levels of review of the settlement all made the same alleged error (i.e. failing to notice that the Crosses had not signed the Form 870-AD) and that this series of errors then led to the challenged assessment being made in the absence of a signed waiver.

It should also be noted that the Crosses' own conduct supports the IRS's contention that they signed the Form 870-AD. Although the IRS issued the challenged assessments in July 1986, it was not until 1995, when the IRS could not produce the Form 870-AD in response to a record request, that the Crosses began to contest the validity of the waiver of the notice of deficiency requirement. The Crosses thus appear to have acted for approximately nine years as though the waiver were valid. See Aplts' App. at 57 (affidavit of Brenda Fisher) ("To my knowledge, no question was ever raised by the taxpayers as to the validity of the [Form 870-AD] or the assessment of the tax liability. The first time I heard of any disagreement was . . . on June 2, 1995.").

Finally, we are unpersuaded by the Crosses' argument that they are entitled to a

trial because the IRS was unable to explain precisely what happened to the Form 870-AD. Although it is true that the IRS did offer such an explanation about the missing form in McGaughey (i.e. that the document was destroyed pursuant to the IRS's record retention procedures), we do not think that the lack of such an explanation in this case requires the district court to hold a trial.

In support of this conclusion, we note that the Crosses have not cited, nor have we found, any authority indicating that a court is required to conduct a trial if the proponent of secondary evidence is unable to offer a definitive explanation of the fate of the original document. Indeed, such a principle is not supported by Fed. R. Evid. 1004(1) or the cases interpreting it. By allowing the admission of secondary evidence if an original is "lost or destroyed" (if the proponent has not acted in bad faith) and by allowing the proponent of the secondary evidence to establish that an original is "lost or destroyed" by demonstrating that it has conducted a diligent search, the decisions applying Rule 1004(1) acknowledge that it will not always be possible to establish what happened to the original. As a result, once the proponent has demonstrated that it has conducted a diligent search, and providing that there is no evidence of bad faith, a court may shift the inquiry away from what happened to the original and toward the secondary evidence that indicates whether the document existed and what it said. See, e.g, McGaughey, 977 F.2d at 1071-72; State Mut. Life Assurance, 874 F. Supp. at 455-56; Blank, 820 F. Supp. at 704-05. Whether the case may be decided on summary judgment or whether a trial is required will

18

depend not on whether the proponent can explain what happened to the original but rather on the weight of the evidence regarding its existence and its terms.

Here, the IRS offered unrebutted evidence that it had conducted a diligent search for the Form 870-AD. In light of the IRS's diligent but ultimately unsuccessful search, it was proper for the district court to consider the secondary evidence offered by the parties. In light of the weight of that secondary evidence, no rational fact-finder could conclude that the Crosses failed to execute the Form 870-AD. Accordingly, it was proper for the district court to enter judgment for the IRS without proceeding to trial.

## III. CONCLUSION

For the reasons set forth above, the decision of the district court is affirmed.

ENTERED FOR THIS COURT


Robert H. Henry
Circuit Judge