# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 106

APRIL TERM, A.D. 2022

September 8, 2022

BRENNAN THOMAS BAKER,

Appellant
(Defendant),

v.

S-22-0022

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable John R. Perry, Judge*

*Representing Appellant:*

> *Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; H. Michael Bennett, Senior Assistant Appellate Counsel of Corthell and King, P.C., Laramie, Wyoming.*

*Representing Appellee:*

> *Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames\*, Senior Assistant Attorney General; Kristin R. Jones, Senior Assistant Attorney General; Catherine M. Mercer\*\*, Assistant Attorney General.*

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

*\*An Order Allowing Withdrawal of Counsel was entered on August 1, 2022.*
*\*\* An Order Allowing Withdrawal of Counsel was entered on September 2, 2022.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]   Brennan Thomas Baker was convicted of aggravated assault and battery and adjudicated a habitual criminal. On appeal, he challenges the district court's admission of the State's cell phone recording of surveillance footage showing the altercation that led to his conviction. We affirm.

## *ISSUE*

[¶2]   Mr. Baker presents one issue on appeal, which we restate as:

> Did the district court abuse its discretion when it admitted the State's cell phone recording of surveillance footage that captured the altercation between Mr. Baker and his victim?

## *FACTS*

[¶3]   In July 2019, Mr. Baker pled guilty to two counts of burglary in separate dockets for acts committed in Gillette, Wyoming. In February 2020, the district court sentenced him to three to five years in prison for each count, suspended in favor of four years of probation.

[¶4]   On October 11, 2020, Mr. Baker attacked Jesse Heppner in the parking lot of a coffee shop in Gillette. He struck him eight to ten times with an object that appeared to be a tire iron or crowbar.[1] The altercation ended when an employee of the coffee shop stepped outside and yelled at the two men.

[¶5]   Officer Austin Baumberger of the Gillette Police Department responded to the scene. By that time, Mr. Baker had left the area, but Officer Baumberger was able to interview Mr. Heppner and photograph his injuries. He also viewed footage of the incident recorded by the shop's surveillance camera. The employee who showed him the footage agreed to make a copy for him.

[¶6]   The next day, Detective Eric Small of the Gillette Police Department contacted the shop's manager regarding the copy of the surveillance footage. The manager said her tech people were going to work on the copy, but when he contacted her again, she reported that they were having a difficult time transferring the footage. Detective Small asked for help from Officer Jeremiah Wagner, a computer forensic analyst for the department. Officer Wagner attempted a download but found that the system would not recognize a thumb

---

[1] At trial, the State's eye witnesses, including the victim, were reluctant to identify the weapon Mr. Baker used, and the weapon was never recovered. On the date of the incident, both the victim and an employee of the coffee shop described it as a crowbar.

1

drive, and he was unable to find a command in the operating system itself that would extract the video to a thumb drive or other digital format. Because these efforts failed, Detective Small used his department-issued cell phone to make a video recording of the surveillance footage. He submitted that recording as evidence.

[¶7]    The State charged Mr. Baker with aggravated assault and battery, and later amended the charge to add a habitual criminal enhancement. It also petitioned to revoke Mr. Baker's probation on the two burglary convictions. At Mr. Baker's request, the district court postponed the hearing on the probation revocations until the aggravated assault and battery charge was resolved.

[¶8]    Before trial on the aggravated assault and battery charge, Mr. Baker moved in limine to exclude Detective Small's recording of the surveillance footage. He asserted that although the video quality was adequate, the audio was tainted by background noise picked up by Detective Small's cell phone recording. The State responded that Detective Small's video was a true and accurate depiction of what law enforcement observed on the surveillance video and that the possibility of the original footage containing clear and discernible audio was minimal. It further asserted that law enforcement attempted but was unable to obtain the original footage, and the footage was not preserved.[2]

[¶9]    At the hearing on Mr. Baker's motion, Officer Wagner testified to his efforts to download the surveillance footage and the reasons those were unsuccessful. He also testified that nothing prevented him from asking the business to turn over its device and there was a high likelihood that had he done so, he would have eventually been able to extract the original footage. He explained why he opted not to seize the device.

> The business was very cooperative with us. Seizing that device would remove their capable – their security capability for a significant amount of time. With a DVR, it's not – is something I would be able to take back and just remove the data within a couple of hours; it would have been a long-term project and they would have been without security for that time period.

[¶10]   The district court concluded the evidence was admissible under Wyoming Rule of Evidence 1004 and denied Mr. Baker's motion in limine. The court emphasized that a third party, not law enforcement, captured the original surveillance footage. It found that law enforcement tried to obtain the original, short of confiscating the coffee shop's equipment, and that the State's recording was not incomplete or distorted in a way that would be prejudicial. It concluded the parties could argue the quality of the evidence to the jury, and the jury could decide the weight it should be given. Finally, the court added:

---

[2] The coffee shop's surveillance system automatically overrode the original footage after six months, a couple of months before Mr. Baker filed his motion in limine.

I feel that I'm almost obligated to make the observation that there in no way is any evidence that was presented here today that would lead me to believe that law enforcement proceeded in bad faith; that is just completely unfounded, and I say that not in a criticism for the defense, but rather in an analysis of the testimony here.

[¶11] A jury found Mr. Baker guilty of aggravated assault and battery. The district court entered an order adjudicating him guilty of the offense, with a habitual criminal sentencing enhancement. The court also revoked Mr. Baker's probation for his two burglary convictions. It reinstated Mr. Baker's sentences of three to five years in prison for the burglary charges, to be served concurrently. It sentenced him to thirty to forty-five years in prison on the aggravated assault and battery conviction, with that sentence to run consecutive to the burglary sentences. Mr. Baker timely appealed to this Court.

## STANDARD OF REVIEW

[¶12] "We review evidentiary rulings for abuse of discretion." *Klingbeil v. State*, 2021 WY 89, ¶ 32, 492 P.3d 279, 286 (Wyo. 2021) (quoting *Mitchell v. State*, 2020 WY 142, ¶ 17, 476 P.3d 224, 231 (Wyo. 2020)). "An abuse of discretion occurs when the deciding court could not have reasonably concluded as it did." *Gilbert v. State*, 2022 WY 62, ¶ 15, 509 P.3d 928, 932 (Wyo. 2022) (quoting *Royball v. State*, 2009 WY 79, ¶ 12, 210 P.3d 1073, 1076 (Wyo. 2009)). "A trial court's rulings on the admissibility of evidence are entitled to considerable deference, and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal. The appellant bears the burden of showing an abuse of discretion." *Putnam v. State*, 2020 WY 133, ¶ 29, 474 P.3d 613, 621-22 (Wyo. 2020) (quoting *Swett v. State*, 2018 WY 144, ¶ 11, 431 P.3d 1135, 1140 (Wyo. 2018)); *see also Klingbeil*, 2021 WY 89, ¶ 32, 492 P.3d at 286 ("We will not disturb the trial court's determination of the admissibility of evidence unless the court clearly abused its discretion.") (citing *Spence v. State*, 2019 WY 51, ¶ 42, 441 P.3d 271, 282 (Wyo. 2019)).

## DISCUSSION

[¶13] In their briefing, the parties address the admissibility of the State's recording of the surveillance footage under W.R.E. 1003 (admissibility of duplicates) and W.R.E. 1004 (admissibility of other evidence of contents). Because we find the district court did not abuse its discretion in admitting the evidence under Rule 1004(1), we need not address the parties' contentions concerning Rule 1003 or the other subsections of Rule 1004.

[¶14] W.R.E. 1002 specifies that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise

3

provided in these rules or by statute." Rules 1003 and 1004 set forth exceptions to the requirement of an original. "Basically, the rule requiring the production of the original as proof of contents has developed as a rule of preference: if failure to produce the original is satisfactorily explained, secondary evidence is admissible." Fed. R. Evid. 1004 (comment); *see also* 31 Charles A. Wright et al., *Fed. Prac. & Proc. Evid.* § 8012 (2d ed., April 2022 update) ("Rule 1004(a) establishes that the best-evidence doctrine merely states a preference for the original when it can be obtained but does not treat as intolerably unreliable all evidence that exists outside the preferred category.") (footnote omitted).[3]

[¶15]  The exception with which we are concerned is Rule 1004(1), which provides that "[t]he original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if . . . [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." W.R.E. 1004(1). Before admitting secondary evidence under Rule 1004(1), a court "must inquire: (i) whether the original was actually lost or destroyed; and (ii) whether the party offering the evidence of the original's contents has acted in bad faith." *Gardner v. Schumacher*, 547 F.Supp.3d 995, 1036 (D.N.M. 2021) (citing *Cross v. United States*, 149 F.3d 1190, No. 96-3243, 1998 WL 255054, at *4 (10th Cir. 1998) (unpublished table opinion).

[¶16]  Mr. Baker does not dispute that the original of the coffee shop's surveillance footage was destroyed when the shop's system overrode it. The only question is whether the State acted in bad faith in that destruction.

[¶17]  This case is much like *State v. Mitchell*, 720 S.E.2d 29, No. COA11-228, 2011 WL 6046201, at *1 (N.C. Ct. App. 2011) (unpublished table opinion). In that case, a convenience store's surveillance system recorded the defendant placing packages of heroin and marijuana in a drink cooler. *Id.* The store owner informed officers that the system was recording properly but due to a broken USB function on the computer, the footage could not be downloaded. The officers therefore recorded the footage by aiming a video camera at the computer screen and recording the images from the surveillance tape. By the time of trial, the original recording was no longer available because the store's system automatically overrode the recording after seven days. *Id.*

[¶18] The defendant argued the government's recording was inadmissible secondary evidence because "the State put forth no reasonable effort to obtain the original video before the expiration of the seven-day time period before which the video surveillance was erased from the system." *Mitchell*, 720 S.E.2d 29, 2011 WL 6046201 at *2. The appellate court disagreed and upheld the admissibility of the recording. It concluded the government

---

[3] W.R.E. 1004(1) is substantially similar to its federal counterpart, Fed. R. Evid. 1004(a). We therefore find federal interpretation of the rule persuasive. *Mgmt. Nominees, Inc. v. Skowronska*, 2019 WY 105, ¶ 31 n.10, 450 P.3d 672, 682 n.10 (Wyo. 2019) ("Where our rules are sufficiently similar to federal rules, we consider federal decisions interpreting them persuasive.").

4

had offered a satisfactory explanation for its failure to produce the original recording and evidence that its recording was an accurate representation of what the officers had viewed on the store's system. It further concluded that nothing in the officers' conduct showed that the government acted in bad faith. *Id.*

[¶19]   Mr. Baker makes the same argument as the defendant in *Mitchell*. He contends the State neglected to use diligence in obtaining the original surveillance footage and its recording was therefore inadmissible under W.R.E. 1004(1). Negligence, or a lack of diligence, however, does not qualify as bad faith under the rule. *Gardner*, 547 F. Supp. 3d at 1036 (citing *Cross*, 149 F.3d 1190, 1998 WL 255054 at *5). Instead, it is "the purposeful destruction or withholding" of the original or "fabrication of secondary evidence" that will support a finding of bad faith. *Gardner*, 547 F. Supp. 3d at 1036.

[¶20]   The record contains no evidence that the officers acted to purposefully destroy or withhold the coffee shop's original surveillance footage. Rather, it was the routine operation of the shop's security system that destroyed the original. *See* 31 Wright et al., *Fed. Prac. & Proc. Evid.* § 8014 (2d ed., April 2022 update) ("[S]econdary evidence usually is admissible to prove contents where someone other than the proponent loses or destroys the originals.") (footnote omitted); *see also United States v. Ross*, 33 F.3d 1507, 1513-14 (11th Cir. 1994) (no error in admitting transcript of recording of defendant's telephone conversation where recording had been made by Spanish police, who destroyed original recording as part of routine practice). Additionally, two of the shop's employees, Officer Baumberger, and Detective Small, testified that the State's recording accurately depicted the contents of the original surveillance footage. There is thus no evidence that the State fabricated the secondary evidence.

[¶21]   Based on the record, the district court could reasonably conclude that the State offered an adequate explanation for its inability to produce the shop's original surveillance footage and that the State did not destroy the original in bad faith. It therefore did not abuse its discretion in admitting the State's recording of the surveillance footage.

[¶22]   Affirmed.[4]

---

[4] Although Mr. Baker did not raise a separate issue concerning his sentence, he asserts there is a discrepancy between the district court's oral pronouncement of his sentence and the mittimus as to which sentences run concurrently and consecutively. He asks that we remand for clarification. We have reviewed the court's oral pronouncement of Mr. Baker's sentence and the mittimus, and we find no discrepancy. Both are clear that the burglary sentences run concurrently, and the sentence for the aggravated assault and battery conviction is consecutive to those concurrent sentences.